TRESTER, Respondent, vs. THE CITY OF SHEBOYGAN, imp.,
Appellant, and ZIMBALL, Respondent.

TRESTER, Appellant, vs. THE CITY OF SHEBOYGAN and others,
Respondents.

*March 23 — April 10, 1894.*

*Municipal corporations: Power to purchase street: Ratification of contract: Counterclaim.*

1. A city has no power to purchase an easement for street purposes, under a charter which, besides the usual provisions for the condemnation of land for public grounds, streets, etc., provides that the city "may lease, purchase, and hold real or personal property sufficient for the convenience of the inhabitants thereof, and may sell and convey the same, and the same while owned by the city shall be free from taxation."

2. A city having no power to make a contract for the purchase of an easement for street purposes cannot ratify such a contract by its subsequent acts.

[3. Whether one defendant can obtain affirmative relief against a co-defendant upon a counterclaim, doubted.]

APPEALS from the Circuit Court for *Winnebago* County. This is an action in equity, brought by *Trester*, a taxpayer and resident of the First ward of the city of *Sheboygan*, to enjoin the city and its officers from paying to one *Zimball* the amount of certain promissory notes executed by the city officers to said *Zimball*. It appears by the pleadings that at a meeting of the common council of the city held April 7, 1890, *Zimball* made the following written proposition to the city: "Proposition submitted by *August Zimball* to the mayor and common council, as proposition submitted to them for consideration: For the sum of $1,175, to be paid as follows: $300 at ensealing, $500 February 1st, 1891, and $375 on July 1st, 1891,— I will cause a deed of dedication to be executed to the city of *Sheboygan* for a street extending through my property from Eighth to Sixth

streets, and cause same to be graded and sidewalks put down, either plank or brick, six feet wide, all to be completed before August 1, 1890."

This proposition was accepted by the council at the same meeting, but no fund was designated out of which the payments were to be made; and on the 18th day of April, 1890, *Zimball* executed and delivered to the city a deed of dedication, for street purposes, of the strip of land named in the written offer, and the city paid the sum of $300 thereon, and executed promissory notes for the balance, payable according to the terms of the offer. These notes have not been paid, and this action is brought to prevent their payment.

The city immediately opened the street, and it has since been used by the public as such. No proceedings were taken to condemn the land. The action was originally brought against the city, the mayor, clerk, comptroller, and treasurer. These defendants answered, not denying any of the material allegations of the complaint, and praying that *Zimball* be made a party defendant, in order that a complete determination of the matters in controversy might be had. Thereupon *Zimball* was brought in, and answered to the merits, substantially admitting the facts above set forth. In his answer he also alleged the same facts, with others, by way of counterclaim as against the plaintiff and the city of *Sheboygan*, and alleged that he graded the alleged street and put sidewalks thereon as proposed in his offer, and claimed that by reason of all the facts the city was estopped from contesting his claim for payment of the notes, and prayed for judgment establishing the validity of the notes, and for judgment against the city for the amounts due thereon, or, in case the proceedings be held void, that the deed of dedication be declared null and void.

No reply appears to have been made to the so-called counterclaim by any of the parties, and the case was tried

before the court. The evidence was brief, and did not change materially the facts set forth in the pleadings. The circuit judge made findings of fact in accordance with the foregoing statement, and held that the plaintiff was entitled to an injunction against the payment of any sum on the contract out of the First ward fund, but that the sums represented by the notes were a valid charge on the general fund of the city, and that *Zimball* was entitled to judgment against the city for the amount of the unpaid notes and interest and costs. Judgment was entered in accordance with the findings. The defendant city appealed from the entire judgment. The plaintiff, *Trester*, appealed from the whole judgment, except that part which enjoined the payment of any sum out of the First ward fund, and that part which awarded him costs. Both appeals were argued together.

*Paul T. Krez*, for the plaintiff.

*Carl Runge*, for the defendant city.

For the defendant *Zimball* the cause was submitted on the brief of *Francis Williams*.

WINSLOW, J. It is well settled in this state that a taxpayer of a municipal corporation may maintain an action to enjoin the misappropriation of the funds of the corporation. *Bay Land & Imp. Co. v. Washburn*, 79 Wis. 423. The main question presented, therefore, is whether the payment of the notes given to *Zimball* would be a misappropriation of the funds of the corporation, and the solution of this question depends primarily upon the answer to another question, namely: Has the city of *Sheboygan* power to purchase an easement for street purposes?

The powers of a municipal corporation are well understood. They are very clearly stated by Mr. Dillon in his work on Municipal Corporations (vol. 1, 4th ed. sec. 89) as follows: "*First*, those granted in express words; *sec-*

*ond,* those necessarily or fairly implied in or incident to
the powers expressly granted; *third,* those essential to the
declared objects and purposes of the corporation, not sim-
ply convenient, but indispensable." Tested by these rules,
we are to determine whether the city of *Sheboygan* had
power to make a contract for the purchase of an easement
for street purposes, or, to express it more briefly, Could it
buy a street?

The city charter of the city is ch. 124, Laws of 1887.
Title 6 of this chapter provides for the condemnation of
public grounds and streets. It provides that "the com-
mon council shall have the right to lay out public parks,
squares, grounds, streets, and alleys, and to widen, change,
and extend the same *as follows."* Then follow substan-
tially the usual provisions for condemnation proceedings,
the petition of the freeholders, the summoning of a jury to
determine the necessity, the determination of damages and
benefits by the board of public works, and the assessment
of such benefits on lands benefited, together with provis-
ions for an appeal from such assessment. This title also
provides for the approval of plats of new subdivisions, and
makes it unlawful to record such a plat without such ap-
proval. The council is also given authority by a three-
fourths vote to institute the proceedings without petition.
The charter also contains the following provision (sec. 11,
title 20): " The said city may lease, purchase, and hold real
or personal property sufficient for the convenience of the
inhabitants thereof, and may sell and convey the same, and
the same while owned by the city shall be free from taxa-
tion." The power to purchase a street must be found
either expressly conferred by or fairly implied under these
provisions, if it be found at all in the charter.

It is contended that it is expressly conferred by the sec-
tion last cited which gives the city authority to "lease,
purchase, and hold" real property. We think the language

of the entire section forbids such a construction. It provides not only that the city may purchase real estate, but that it may sell and convey *the same*, and that it shall be free from taxation. Plainly it is contemplated that the property to be bought under this section is such as is necessary for purely corporate uses, because it is immediately provided that the city may sell and convey the same. The power of sale is coextensive with the power of purchase. Now, no one will contend that the city has the power of sale of a street easement, however it may be acquired. It may by proper proceedings vacate, but it cannot sell, its easement. This is fundamental. Again, the clause providing that the land purchased shall be free from taxation is very significant. Would such a clause be inserted for the protection of a street? Did any one ever have the hardihood to claim that an easement for a street was taxable? We think not. This clearly indicates what we think must be held to be the meaning and intent of the provision, namely, that it is a provision enabling the city to purchase in fee or lease such lands as may be necessary for municipal uses, such as grounds for public buildings, markets, and the like, as distinguished from easements for streets, which it holds, not for the benefit of the municipality alone, but for the convenience of every traveler, be he a citizen of *Sheboygan* or of Madison or of another state.

Again, the elaborate and lengthy special provisions regulating the acquirement of lands for streets, under familiar principles, go far towards controlling any general language in other parts of the charter which otherwise might be held as intended to have a bearing on the subject.

It is true that it was held in *Gilman v. Milwaukee*, 31 Wis. 563 (Mr. Justice LYON dissenting), that a city is authorized, under a section similar to this one under consideration, to lease land temporarily and allow the public to travel over it in the case of some emergency by which travel may

have become impossible over the regularly opened highway. We do not regard this decision as conflicting with the views expressed in this opinion. The opinion in that case expressly says that " the principles applicable to ordinary highways do not apply any more than they would if the city itself had owned the lots and had permitted the public to use them for the purpose of passage; and therefore the question, as it seems to us, is not whether a public highway can be held by demise, but whether the city could lease lots for the use of the ·public to travel over in any case and upon any emergency." There the city made a definite lease for a year of certain lots, and allowed the public to use the property for street purposes. It could, in the absence of stipulations to the contrary, sell and assign its lease at any time, or it could use the property for other purposes. In the present case the city has attempted to purchase an easement for a street, which it could never sell nor use for anything but legitimate street purposes. It is evident that the questions in the present case were not in the *Gilman Case.* All that is there decided may be freely conceded without interfering with what is here decided.

There is a question of public policy which naturally suggests itself as having an important bearing on this subject. The manner by which the city may acquire new streets is specifically and elaborately laid down in its charter. Hasty, ill-advised, or corrupt action is most carefully guarded against. A jury must pass upon the fundamental question of necessity. The interests of the landowner are thus effectually guarded as against the city, while at the same time this same provision protects the taxpayers against the governing body by making it impossible for it to take land for a street, and spend or mortgage the corporate funds, in the absence of the decision of a disinterested jury. The object is plain. Streets which are not dedicated to the public voluntarily by the landowner are to be acquired in one cer-

tain and specific way. The provisions are wholesome. They protect the private owner as well as the taxpayer, and we can have no doubt but that by necessary implication they prevent the acquiring of streets by purchase, as has been here attempted. The power to so acquire streets has neither been expressly granted, nor is it fairly or reasonably to be implied, nor is it in any respect essential to the declared objects and purposes of the corporation.

We have been referred to no authorities bearing directly on the question, nor have we been able to find any. We have therefore treated it as a question arising under general principles.

In this view of the subject, it becomes unnecessary to discuss or decide the effect of any of the alleged irregularities in the proceedings of the common council in making the contract with *Zimball*. Nor can the doctrine of ratification or estoppel be successfully invoked to uphold the validity of the notes. The city council, having absolutely no power originally to make the contract of purchase, cannot ratify it by subsequent acts. *Clark v. Janesville*, 13 Wis. 414; *Dullanty v. Vaughn*, 77 Wis. 38.

The so-called counterclaim of *Zimball* in this action asked affirmative relief against the city of *Sheboygan*, a codefendant. Whether such relief can be granted under a mere counterclaim is certainly very doubtful. A cross complaint seems to be the proper foundation for such relief. Under the statutes a counterclaim lies only on a cause of action existing in favor of a defendant and against a plaintiff. R. S. sec. 2656; *Northwestern Mut. L. Ins. Co. v. Park Hotel Co.* 37 Wis. 125. But, as we hold the attempted purchase and the notes given to be void, it becomes unnecessary to decide these questions.

*By the Court.*— Judgment reversed on both appeals, and action remanded with directions to render judgment for the plaintiff in accordance with this opinion.