Becker vs. The City of La Crosse.

---

BECKER, Respondent, vs. THE CITY OF LA CROSSE, Appellant.

*April 13 — May 3, 1898.*

*Municipal corporations: Rights and powers outside of state.*

A city of this state has no power to accept a privilege, granted to it by the legislature of another state, of constructing a highway over· territory belonging to such other state, subject to liability for all damages caused by the improper construction or want of repair of such highway, and therefore it cannot be held liable for an injury caused by defects in a highway so constructed, occurring outside the state.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

Ch. 37, Laws of 1889, authorizes the city of *La Crosse* to construct a bridge across the Mississippi river from some point in the corporate limits to some point in the county of Houston, in the state of Minnesota, opposite the city, with all necessary approaches thereto, and to charge and collect a reasonable rate of toll. By ch. 325 of the Special Laws of Minnesota for the year 1889, the city of *La Crosse* was authorized to construct and maintain a wagon road commencing at any point on a lawful highway in the said county of Houston north of the south line of the Pine Creek road, and extending thence, by the most feasible route, to the boundary line between Minnesota and Wisconsin, opposite the corporate limits of the city, and to charge a reasonable rate of toll for travelers thereon. By sec. 5 of said act it was also provided that the city should be liable for all damages sustained by any person traveling upon said road caused by the improper construction of said road or want of reasonable diligence in keeping the same in repair. The city accepted the provisions of the act, and built a road, with the necessary bridges, from a point within its corporate limits westward to a point in Minnesota, a distance of about two and one-half miles. The road runs across the Mississippi river bottom lands, and is built on a grade from eight to sixteen feet above the adjoining land. At the point where the accident to plaintiff is alleged to have occurred, which is about eighty-five feet west of the main bridge, the roadway is on a grade sixteen feet above the adjoining land, twenty feet wide on the top, with a descending slope of about one foot perpendicular to one and one-half feet horizontal and without any rail or guard at the sides.

On March 23, 1896, the plaintiff and her husband passed over this road from La Crescent to *La Crosse*, driving a single horse and buggy. Upon their return, the plaintiff

was driving, seated on the left side of the buggy. Near the place of the accident they met two teams loaded with what is known as "Minnesota fencing." The first team was passed in safety, but, as they met the second team, the horse shied at a man wearing a fur overcoat, walking immediately in the rear of the wagon, cramped the buggy suddenly, and backed off the embankment. In attempting to jump out, the plaintiff was caught in the buggy in some way, and was dragged down the embankment and injured. Notice was duly given to the city, and this action was commenced in the circuit court for La Crosse county, to recover damages for the injury sustained. The place of the accident is admitted to have been outside the corporate limits of the city, and within the boundaries of the state of Minnesota. The liability of the city is based upon the manner in which the road was constructed and maintained, there being no railing or barriers along the sides thereof.

The jury found a verdict for plaintiff for $1,000. From a judgment entered thereon, the defendant appeals.

For the appellant there was a brief by *Martin Bergh*, city attorney, and *Bleekman, Bloomingdale & Bergh*, of counsel, and oral argument by *F. H. Bloomingdale* and *Martin Bergh*.

For the respondent there was a brief by *Higbee & Bunge*, and oral argument by *E. C. Higbee*. They contended, *inter alia*, that for its negligence in respect to its corporate acts and the conduct of business from which it derives profit, such as gas works, waterworks, docks, ferries, and the like, a city is liable in the same manner as private persons or corporations. Dillon, Mun. Corp. (3d ed.), § 964; 15 Am. & Eng. Ency. of Law, 1141; *Mulcairns v. Janesville*, 67 Wis. 24; *Wilkins v. Rutland*, 25 Am. & Eng. Corp. Cas. 49; *Welsh v. Rutland*, 56 Vt. 228; *Hill v. Boston*, 122 Mass. 344; *Murphy v. Lowell*, 124 id. 564; *The Giovanni v. Philadelphia*, 59 Fed. Rep. 303; *Guthrie v. Philadelphia*, 73 id. 688.

Becker vs. The City of La Crosse.

Where it enters into private business it assumes all the responsibilities that attach to individuals in like circumstances. *Western S. F. Soc. v. Philadelphia*, 31 Pa. St. 175; *City Council of Augusta v. Hudson*, 88 Ga. 599; *The F. C. Latrobe*, 28 Fed. Rep. 378; *Sherlock v. Alling*, 93 U. S. 108.

BARDEEN, J. From the statement of the facts involved in this litigation, it will be observed that the accident to plaintiff happened on an embankment, some little distance west of the west end of the bridge across the Mississippi river, outside of the corporate limits of the city of *La Crosse*, and beyond the limits of this state; and it is insisted that the city of *La Crosse* built and maintained the road in question without any charter or legislative authority from the legislature of this state. It is not claimed that the charter gives the city any authority or power in the premises. The only power granted by the legislature is such as is contained in ch. 37, Laws of 1889. Dillon on Municipal Corporations (4th ed.), § 89, says: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,— not simply convenient, but indispensable." This declaration of the law meets with express approval in *Trester v. Sheboygan*, 87 Wis. 496. It is also a rule of law as universal in its application that the agents, officers, or even the city council, of a municipal corporation cannot bind the corporation by the assumption of powers beyond those granted by the sovereign authority, except within the limitations above stated. It would seem like a truism to state that the legislature cannot grant authority to a municipal corporation to assume obligations or to charge itself with permanent duties to be performed outside of the state limits.

Sec. 1, art. IX, Const. Wis., declares that "the state shall have concurrent jurisdiction on all rivers and lakes bordering on this state, so far as such rivers or lakes shall form a common boundary to the state, or any other state or territory now or hereafter to be formed and to be bounded by the same." The boundary line between this state and Minnesota is the main channel of the Mississippi river. Const. art. II, sec. 1. In the exercise of its "concurrent jurisdiction" over the Mississippi river, this state saw fit, by ch. 37 before mentioned, to grant to the city of *La Crosse* the right to construct a bridge across the river to some point in Minnesota with all necessary approaches thereto. Admitting that this authority was properly conferred, for the purposes of this suit, the act referred to did not and could not grant the right to the city to build and maintain a highway two and one-half miles long, on the bottom lands of the river in the state of Minnesota. There is therefore nothing in the charter of the defendant city, or in ch. 37, giving it authority to keep up, or making it its duty to maintain, the highway upon which the plaintiff was injured.

The question, then, recurs, Had the city the authority or right to accept the privilege granted it by the state of Minnesota? We have been referred to no case, and after careful search we are unable to find one, in which this precise question has been determined. Such a decision may be in the books, but the industry of both counsel and court has. been unavailing to find it. While it may be admitted that the maintenance of this bridge and highway may be of material advantage to the city and may add largely to the commerce of its inhabitants, it cannot be said to be of such paramount importance as to require any stretch of legal principles to sustain that right. It is true that municipal corporations are often granted proprietary or private rights, which they may exercise under the same perils and obligations as a private person; but those rights can only come

from the source that gave it corporate existence. By the acceptance and exercise of these rights, the corporation assumes the same obligations and responsibilities, and the same duty to so exercise them as not to invade the rights of others, as fall upon private persons. The distinction between the rights which the corporation possesses in its governmental or public character, and those which fall to it in its proprietary or private character, originated in the courts, to promote justice, and has been frequently applied to escape technical difficulties, in order to hold such corporations liable to private actions. 1 Dillon, Mun. Corp. § 67.

The general doctrine is clear that such corporations cannot usually exercise their powers beyond their own limits. The right to exercise extraterritorial powers can only arise by express grant of authority, as indicated in *Mayor v. Moran*, 44 Mich. 602, or by necessary implication from other powers granted, as is pointed out in *Coldwater v. Tucker*, 36 Mich. 474. And the powers so exercised must be directly within the range of corporate purposes. Considerations of local policy, no doubt, induced the legislature to grant the city of *La Crosse* the right to build the bridge mentioned. The movers in this enterprise evidently appreciated the serious difficulties attending the erection and management of expensive public works situated partly in this state and partly in Minnesota. It was to remove, in some degree, these difficulties, that the legislation referred to was obtained from the state of Minnesota. The corporation of *La Crosse* exists only by the grace of the legislative grant of this state. As before suggested, it possesses no power and can assume no obligations except such as may come from the original source. To permit it to accept rights, and to assume duties, beyond the power of its creator to enforce or to regulate, would be an innovation we are not prepared to sanction. From the very necessities of the situation, it would have no power to regulate or protect its erections in a foreign jurisdiction.

The noted case of *Bailey v. New York*, 3 Hill, 531, and *New York v. Bailey*, 2 Denio, 433, illustrates some of the complications that might arise in that regard. To permit the city, no matter how desirable it may be, to expend its money, and to obtain rights and privileges, beyond its own limits, and beyond the limits over which its creator has jurisdiction, would be unwise and dangerous, to say the least, and against public policy. Its acts in this regard being *ultra vires*, the municipality cannot be held liable therefor, or for failure to perform such acts, to the injury of others. Tiedeman, Mun. Corp. § 338. And see *Trester v. Sheboygan*, 87 Wis. 496; *Cavanagh v. Boston*, 139 Mass. 426.

In arriving at this conclusion, we have not overlooked the rule laid down in the celebrated case of *Bank of Augusta v. Earle*, 13 Pet. 519, to the effect that a corporation created by one sovereignty may, by comity, do business, hold property, and sue in the courts of other sovereignties of the Union, nor the line of decisions that hold that a city may take and hold the title to property outside of its corporate limits. In the first instance, the rule must be confined to trading or commercial corporations in contradistinction to municipal corporations; and, in the second line of cases referred to, the decisions are based upon the rule that the right to *own* property is not a sovereign right, and that the title to property may vest in the municipality even though it may not exercise the rights of sovereignty over it. *Lester v. Jackson*, 69 Miss. 887; *In re New York*, 99 N. Y. 569. And see *McDonogh's Ex'rs v. Murdoch*, 15 How. 367. We therefore hold that the city of *La Crosse* was without authority, under its charter or the law of this state, to accept privileges or assume duties and obligations to be performed outside of the limits and beyond the jurisdiction of this state, and, owing no duty to the plaintiff with reference to this highway, cannot be held liable in this action.

The cases of *The Giovanni v. Philadelphia*, 59 Fed. Rep.

303, and *Guthrie v. Philadelphia*, 73 Fed. Rep. 688, cited to support the plaintiff's recovery, are quite unlike the case at bar. We have no quarrel with the proposition that, when a municipal corporation engages in things not municipal in their nature, it acts as an individual, and is responsible accordingly. In each of these cases the corporation defendant engaged in the performance of duties strictly within its chartered powers, and the recovery against it was based entirely on that ground.

There is another feature of this case that raises a most serious question, should the liability of the city to keep up this highway be conceded. The road in question was twenty feet in width on the top, in perfect condition, and, so far as the evidence shows, with ample room for the accommodation of the public, in view of its use. The only imperfection in the highway is the alleged failure to erect and maintain guards or barriers along this embankment. The city is not an insurer of travelers on its streets. It is only required to keep its highways in a reasonably safe condition for travel. Here the way was broad and ample for the passage of teams, and it may reasonably be claimed, as a matter of law, that this highway met all the conditions required in such cases. That question, however, we leave for future determination.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to dismiss the complaint.