SCHNEIDER, Appellant, vs. CITY OF MENASHA and others,. Respondents.

*May 14—May 29, 1903.*

*Municipal corporations: Contracts: Powers outside corporate bound-aries: Purchase of stone quarry outside of city limits: Right to hold: Ultra vires.*

1. The general rule that the authority of a municipal corporation: does not extend beyond its corporate boundaries does not apply to its mere business functions, but does to its governmental au-thority.
2. As to the mere business side of a municipal corporation's affairs,. what constitutes a public purpose inside its boundaries does. not become otherwise by passing beyond such boundaries.
3. A municipal corporation possesses, as incidental to its express powers and the object of its existence, implied authority to do, those things essential to efficiently accomplish the latter, and all those powers germane and reasonably necessary or con-venient to the efficient exercise of the former.
4. A city having express authority to grade and pave streets and to· purchase and hold all real estate necessary or convenient for its use, has, by implication therefrom, authority to use all reasonable methods of executing the same, including that of· purchasing a stone quarry within or without its corporate lim-its for the purpose of obtaining therefrom raw material from which to manufacture crushed rock.
5. The limit of the distance from the boundaries of a city within which it may legitimately exercise its mere right to own and use property for municipal purposes, is governed by the nature of the particular end in view, to be determined by the exercise of discretion, the uttermost limit being at the point where· reasonable convenience, considering the end and the means, is perceptible, to be determined by the exercise of human judg-ment in very much the same way that a private corporation. would solve a like question under the same or similar circum-stances.
6. Respecting an executed contract with a private corporation, neither party thereto, as a general rule, can invoke the doc-trine of *ultra vires* either in attack or defense in a judicial· proceeding, the violation of law being solely a matter for sov-ereign authority to deal with; but that does not apply to con-tract transactions with a municipal corporation.

7. Subject to an exception next to be noted, a person dealing with a municipal corporation is conclusively presumed to know the limits of its power, and cannot, therefore, successfully plead ignorance thereof to save himself from loss, whether the contract be executed or not.

8. If a contract be made by a corporation with a person, beyond the scope of its power, not, however, expressly prohibited by its charter or any law, if there be no bad faith in the matter in fact, and in and by the same, property of such person passes into the possession of the corporation and is actually used by it for legitimate corporate purposes, a cause of action will thereby accrue in favor of such person on equitable grounds to recover the value of such benefit, not exceeding that of the money or property acquired and used.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge.  *Affirmed.*

Taxpayer's action to restrain defendant city and its officers from consummating a contract to purchase a tract of land just outside the corporate limits of the city, from which to obtain stone for manufacturing crushed rock for city purposes.  The complaint contained all the necessary allegations to raise the question of whether the city possessed power to do the act sought to be prevented.  The defendant city answered that the purpose of purchasing the land was to obtain a supply of crushed rock for use upon the city streets, and that such land was conveniently located for such purpose.  A motion for a preliminary injunction was denied, and plaintiff appealed.

*J. C. Kerwin,* for the appellant, contended, *inter alia,* that equity will restrain misappropriation of funds of a city for unlawful purposes.  2 Dillon, Mun. Corp. (4th ed.) § 917 (732); 2 High, Inj. § 1241; *Bay L. & I. Co. v. Washburn,* 79 Wis. 423; *Whiting v. S. & F. du L. R. Co.* 25 Wis. 167; *Frederick v. Douglas Co.* 96 Wis. 416; *Trester v. Sheboygan,* 87 Wis. 496; *Mueller v. Eau Claire Co.* 108 Wis. 304; *Kyes v. St. Croix Co.* 108 Wis. 136.  In the absence of express legislative authority the city had no power to make the pur-

chase. 2 Dillon, Mun. Corp. (4th ed.) § 565 (435); Tiede-
man, Mun. Corp. § 201; *Riley v. Rochester*, 9 N. Y. 64;
*Tresler v. Sheboygan*, 87 Wis. 496; *Duncan v. Lynchburg*
(Va.) 48 L. R. A. 331; *Concord v. Boscawen*, 17 N. H. 465;
*Chambers v. St. Louis*, 29 Mo. 543; *Hafner v. St. Louis*, 161
Mo. 34. The exception to the general rule that municipal
corporations cannot purchase real estate beyond their corpo-
rate limits, except by express grant, embraces only cases com-
ing within the police power, or of indispensable necessity.
2 Dillon, Mun. Corp. (4th ed.) § 565 (435); Tiedeman,
Mun. Corp. § 201; *Duncan v. Lynchburg* (Va.) 48 L. R. A.
331. General authority found in city charters to purchase
real estate without specification as to locality means within
the corporate limits of the city. *Riley v. Rochester*, 9 N. Y.
64; Stats. 1898, sec. 925—52, subd. 25; ch. 55, Laws of
1899; *Thompson v. Moran*, 44 Mich. 602. Under the ordi-
nary rule of construction of statutes the power conferred to
purchase land for certain purposes inside of the limits ex-
cludes by implication the right to purchase for any other pur-
pose. *Duncan v. Lynchburg* (Va.) 48 L. R. A. 331; *Paine
Lumber Co. v. Oshkosh*, 89 Wis. 449; 2 Dillon, Mun. Corp.
(4th ed.) § 563; *Thompson v. Moran*, 44 Mich. 602; *Cham-
bers v. St. Louis*, 29 Mo. 543; *Hafner v. St. Louis*, 161 Mo.
34; *Somerville v. Waltham*, 170 Mass. 160.

For the respondents there was a brief by *Bouck & Hilton*
and *J. M. Pleasants*, and oral argument by *Gabe Bouck*.

MARSHALL, J. Respondents urge in support of the order
appealed from the doctrine that, respecting an executed con-
tract, only the state can invoke the doctrine of *ultra vires* to
challenge the right of a corporation to exercise power beyond
the scope of its charter. That doctrine is applied quite gen-
erally to private corporations. It is not, however, to public
corporations. The numerous cases decided by this court, es-
tablishing the right of taxpayers to intervene to prevent the

unlawful disposition of public money or to compel its restoration, clearly indicates that. *Webster v. Douglas Co.* 102 Wis. 181, 77 N. W. 885, 78 N. W. 451; *Northern T. Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460. It is deemed so unsafe to allow the officers of a municipality to bind it beyond the scope of its powers, that all persons are held firmly to the rule that, in dealing with such a corporation, they are presumed to know the limit of its authority and act at their peril. The result is that no one can successfully plead ignorance to save himself from loss in dealing with a municipality as to matters expressly prohibited, nor, as to any matter beyond the scope of corporate authority except in case his money or property has actually been used for legitimate corporate purposes. In that event, on equitable grounds, the court will afford a remedy to the extent of the corporate benefit, but no further. *Thomson v. Elton,* 109 Wis. 589, 85 N. W. 425; Beach, Pub. Corp. § 219.

Counsel for appellant bring to our attention a number of authorities to sustain the contention that a city cannot purchase real estate outside of its corporate limits, but none that seems to really touch the precise question here presented, which is this: Can a city, under its general power to "purchase and hold real estate sufficient for the public use, convenience or necessities" (charter of *Menasha,*—sec. 4, subch. XV, ch. 123, Laws of 1891), purchase real estate outside of its corporate limits convenient for use in obtaining a supply of crushed rock to be used upon the city streets?

The city of *Menasha* had express authority to improve its streets. It had express authority to purchase such real estate as it deemed reasonably necessary or convenient for the city's use. It possessed, by implication, all the powers reasonably necessary to the proper exercise of such express powers, and those essential to the objects and purpose of its corporate existence. *Trester v. Sheboygan,* 87 Wis. 496, 58 N. W. 747. The acquirement of a supply of crushed rock for use upon

the city streets was a legitimate city purpose. That is conceded. It must be conceded, also, that to obtain such supply by the purchase of real estate and manufacturing the crushed rock therefrom within the city limits would be a legitimate exercise of corporate power. Would an act which does not involve the exercise of sovereign authority,—one in the exercise of the ordinary business functions of a city inside the city limits,—cease to be such if performed just over the boundary line or within a convenient distance from the city?

The language of the charter is general. Looking at the literal sense thereof, the city may do business outside its boundaries so far as reasonably necessary to carry out the express powers granted to it, as well as within. It is admitted that a city may own realty outside its limits for purposes which are essential to its welfare, as for a cemetery or pesthouse. On that 2 Dillon, Mun. Corp. (4th ed.) § 565, is cited. Judge Dillon, as we shall see later, some time after the text of his work was written, successfully maintained much broader authority for cities. Counsel suggests that if the city can go outside its boundaries for a stone quarry because the corporation needs crushed rock for use upon its streets, it can go to any distance therefor, and that if it can go into the rock crushing business, it can also go into the business of building rock crushers. That argument, though plausible, lacks the merit of novelty, as will hereafter be seen. As an authority peculiarly in point, we are referred to *Duncan v. Lynchburg,* 34 S. E. 964, 48 L. R. A. 331, decided in the supreme court of appeals of Virginia. At first glance the case seems to strongly support counsel's side of the controversy, but upon a careful study thereof it appears that the powers of the charter of Lynchburg were much less liberal than those of the respondent city. Moreover, we find that the authorities cited do not support the extreme views of the Virginia court. The Lynchburg charter only authorized the purchase of property necessary for city purposes. The charter

before us authorizes the purchase of property necessary or convenient for such purposes. The authorities cited by the Virginia court, in the main, bear on the question of exercising governmental powers outside the city. Those that touch on mere rights of ownership, support a view rather contrary to the decision of the court. For example, *Riley v. Rochester,* 9 N. Y. 64, is referred to. The learned counsel here rely upon that and similar cases. The New York court expressly declined to hold that a city cannot take title to realty outside its limits for any purpose. It held that it cannot do so for the purpose of exercising governmental authority over the same. *Coldwater v. Tucker,* 36 Mich. 474, was cited by the Virginia court and is also relied upon here. That holds that a city may own public works outside its boundaries by implied authority under some circumstances. '

The rule that a city cannot exercise its governmental authority outside its limits has nothing to do with the case in hand. This court held that it cannot exercise such authority in *Becker v. La Crosse,* 99 Wis. 414, 75 N. W. 84. It at the same time recognized that a city may exercise its mere right to own and use property for legitimate city purposes outside its boundaries. That is very decisively maintained in the following cases, which seem to fully cover the case in hand, so far as decisions in another jurisdiction can do so: *People ex rel. Murphy v. Kelly,* 76 N. Y. 475; *Matter of Application of Mayor, etc.* 99 N. Y. 569, 2 N. E. 642; *Lester v. Jackson,* 69 Miss. 887, 11 South. 114. In the second case cited Judge Dillon appeared for the city of New York and prevailed in the contention that the city possessed power to purchase land outside the city for a park. It was suggested to the court by the opposition, as an indication of the absurdity of that doctrine, that if land outside a city can be held for a park, it can acquire property regardless of distance; that if the city of New York can purchase land three miles from its limits, it can go to the Falls of Niagara or to the Adirondack

Mountains, and can also build and operate a railroad to the premises acquired, and when its right in the matter is challenged, defend upon the plea of city purpose and implied power to subserve the same. That argument was taken seri- ously by the court and considered, with the result, based upon reason and authority, that a general grant of power as regards those matters which do not involve governmental functions, cannot be fenced about by corporate limits; that what constitutes a city purpose within such limits does not change merely by passing beyond the same. This language was used:

"The truth is that neither in authority, nor in the legislative practice, nor in the common sense of the question is there any basis for declaring that there can be no true and sound municipal purpose which reaches beyond the corporate lines."

The undoubted right to purchase a water supply outside the city was suggested, and the instance was pointed to of New York going for such purpose to a distance of forty miles from the city and expending millions of dollars in that regard. After disposing of the primary question of whether all city purposes end at the corporate limits going outward, and commence at such limits coming inward, the court took up the idea of distance suggested by the illustration given by counsel, and held that power in that regard is limited by the very nature of it; that so long as, considering the end in view, the range of reasonable convenience and adaptation to the exercise of the express power is not overstepped, municipal authority is not exceeded; that when an extreme action shall have been taken, so as to impress the impartial mind of some ulterior purpose, it is time to pause if not to turn backward. That doctrine was indorsed in *Lester v. City of Jackson, supra*, which was another case of buying land beyond the city limits for a park. The language of the court, in substance, was this: A municipal corporation may take and hold land convenient and accessible for a park, although it lies outside the corporate limits, and the charter confers no express au-

thority to own land outside; the city cannot exercise its sovereignty over it, but it can exercise all the rights and powers pertaining to ownership.

It would not be profitable to examine at length the numerous cases called to our attention by appellant's counsel to support his view. It seems sufficient to say that, in the main, they hold that municipal authority in a governmental sense cannot be exercised outside the limits of the municipality. That is in harmony with the decision of this court, as we have seen. It is also in harmony with the view that municipal ownership may reach beyond corporate limits, as held in the cases to which we have referred. When one draws the distinction between mere right to own property for city purposes and the right to exercise sovereign authority over property, the authorities upon which this case was grounded are easily seen not to warrant the result sought.

In testing the question of whether a municipality has exceeded its corporate authority in going outside its boundaries in any given case, we must first determine the purpose in view. If that be found to be the exercise of police authority, or authority to govern in any sense, the conclusion must be that the end does not justify the act. If it be found to be the mere exercise of a business function, the conclusion must be that the mere act of going beyond the boundary does not necessarily involve excess of power. In determining whether corporate authority has been exceeded by reason of distance from the city limits the act in question reaches, we must solve that by an appeal to reason and common sense, keeping in mind that municipal corporations, in their business matters, are governed by very much the same rules as private corporations. *Washburn Co. v. Thompson*, 99 Wis. 585, 75 N. W. 309. It comes down in each case to the exercise of mere human judgment. That being the case, there must necessarily be a wide range within which municipal officers, acting in good faith, may go, and not be guilty of such an abuse of

power as to render their acts, as acts of the city, void. As suggested in the New York case, they may go to the point where to go further would indicate some ulterior motive,—indicate that a legitimate city purpose was no longer in view. That would be true whether the act done were performed within or without the corporate limits. Manifestly, in purchasing real estate for the convenience of a city, the element of convenience will enter into the matter, whether the purchase be made on one side or the other of the boundary line of the corporation. If the agents of the city should go so far from its boundary to obtain land for its use that the element of convenience would be no longer apparent, there would undoubtedly be such an abuse of authority as to render the act void. There is nothing of the kind in this case. It is not questioned, as we understand it, that municipal authority was not exceeded if power existed to purchase land for the purpose of obtaining a supply of crushed rock for use upon the city streets, beyond the city limits, at all. It follows, therefore, that the order appealed from must be affirmed.

*By the Court.*—Order affirmed.