## WILLIAM H. PETERSON v. CITY OF JORDAN.[1]

### January 19, 1917.

### Nos. 20,090—(206).

**Demurrer.**

1. Complaint *held* not to state a cause of action.

2. Chapter 111, Laws of 1913 (G. S. 1913, § 1797), construed and *held* not to place upon a city of the fourth class the duty of maintaining and keeping in repair highways beyond its boundaries and leading into it, for the improvement and maintenance of which such city had appropriated money.

Action in the district court for Scott county, by the representative of the estate of Herman Peterson, deceased, to recover $7,500 for the death of his decedent and $315.47 for his funeral expenses. From an order, Morrison, J., sustaining defendant's demurrer to the complaint, plaintiff appealed. Affirmed.

*F. J. Leonard* and *D. E. Dwyer,* for appellant.

*George F. Sullivan* and *W. C. & W. F. Odell,* for respondent.

QUINN, J.

This is an action brought by William H. Peterson, as administrator of the estate of Herman Peterson, deceased, to recover damages for the death of plaintiff's intestate, occasioned by the alleged negligence of the defendant city in failing to provide and maintain proper lights and guards in that public highway commonly known as the Ferry Road, at a point outside of the corporate limits of the city where that highway intersects the Minnesota river in Scott county.

The defendant interposed a demurrer to the complaint, upon the ground that the complaint does not state facts sufficient to constitute a cause of action. From an order sustaining the demurrer plaintiff appeals.

The complaint so far as here material alleges in substance: That the

1 Reported in 160 N. W. 1026.

defendant is a city of the fourth class, organized under chapter 4, Sp. Laws 1891, and situated in the county of Scott, in this state; that the Minnesota river constitutes the line between Scott and Carver counties. That there is, and for several years past has been, a public highway extending from the defendant city in a westerly direction to and across this river, at a point something over one mile westerly from the western boundary of the city limits. At the time in question the river at this point was about 300 feet wide, with abrupt shores on the easterly side, the water was deep and the current strong.

That on September 25, 1915, and for a number of years prior thereto, defendant owned, operated and controlled a ferry-boat for the carrying of passengers, teams and vehicles traveling upon such highway across the river at the intersection of the highway, and that it also controlled and cared for the landings and approaches to such ferry in the highway where the boat was accustomed to land and connect with the highway.

That at the time in question the defendant city carelessly and negligently maintained, ran and operated such ferry-boat and ferry in this: That it failed to have and provide any fence, barrier, signal light, sign, railing or other notice, warning or at all, so as to notify and warn travelers on such highway at night of the location of the ferry, the landings thereof or of the approaches thereto, or the whereabouts of the river on said highway and their proximity thereto, thereby rendering such highway extremely unsafe and dangerous to persons traveling thereon.

That the plaintiff's intestate was traveling over said highway with his father and mother in an automobile, which his father owned and was then driving, on their way from their home in the state of Iowa to the city of St. Paul; that while they were so traveling upon such highway and at about 2:30 o'clock a. m. September 25, 1915, and going in a westerly direction, as they approached the river, and while the deceased and the driver of said automobile were without timely knowledge, notice or warning of the existence of the river at said place, or of the conditions surrounding the same, and while the ferry-boat was absent from the east landing of the ferry, the driver of the automobile ran the same into the river at the place used by the ferry-boat, by reason of which the said Herman Peterson was cast into said river and drowned, and said automobile destroyed.

There is no direct allegation in the complaint that the driver or the plaintiff's intestate at the time of the accident was in the exercise of due care. It is conceded that defendant by its original charter was given the care, supervision and control only of those highways, bridges, streets, grounds and public squares within its corporate limits. That such charter contains no express provision authorizing it to maintain or operate ferries, either within or without its corporate limits.

The important question then is: Was the defendant city authorized and empowered to maintain and operate the ferry at the time and place in question and was it charged with the maintenance of the highway in question or was such maintenance and operation *ultra vires?*

It is a general and undisputed proposition of law, that neither the officers nor council of a municipality can bind the corporation by the assumption of powers beyond those granted to such corporation by the sovereign power; such corporation possesses and can exercise only such powers as are granted to it in express words, and those necessarily or fairly implied in or incident to the powers expressly granted, and those essential to the declared purposes of the corporation. Becker v. City of La Crosse, 99 Wis. 414, 75 N. W. 84, 40 L.R.A. 829, 67 Am. St. 874.

There is, therefore, nothing in the law which gives to the defendant city power or authority to maintain and operate the ferry in question, or which makes it the duty of the defendant city to maintain the highway upon which the accident occurred, unless it be found in chapter 111, p. 127, Laws of 1913 (G. S. 1913, § 1797).

Chapter 111, p. 127, Laws of 1913, is entitled: "An act to amend section 775, Revised Laws of 1905, relating to the expenditure and appropriation of money by villages and cities of the fourth class to improve and maintain roads and bridges lying without the corporate limits."

The act reads as follows: "The council of any village or of any city of the fourth class may appropriate and expend such reasonable sums as it may deem proper to assist in the improvement and maintenance of roads lying beyond its boundaries and leading into it, and to improve and maintain bridges and ferries thereon, whether they are within or without the county in which it is situated."

The meaning and purpose of this statute seem clear. As indicated in its title, the act simply authorizes the council of any village, or of any city

of the fourth class to appropriate, that is, to contribute, such reasonable sums of money as it may deem proper to assist in the improvement and to assist in the maintenance of roads lying beyond its boundaries and leading into it; and to assist in improving and maintaining bridges and ferries thereon. It would be an unusual stretch of construction to say that in the enactment of this statute it was intended to divide the duty or responsibility of the care and maintenance of such highway between the city and township authorities, or to take the same from the town authorities and place it upon such village or city; no such intention is expressed or indicated in the act.

We therefore hold that the defendant city was without authority to maintain or operate the ferry-boat at the time and place in question, and therefore, owing no duty to the plaintiff's intestate with reference to the highway in question, cannot be held liable in this action.

Under this view of the case it becomes unnecessary to consider whether chapter 111, p. 127, Laws of 1913, was repealed by chapter 235, p. 290, Laws of 1913.

Order affirmed.