JAMES C. EATON, District Attorney Barron County
You state that Barron County owns and operates lime quarries in both Barron County and Dunn County and sells lime at cost to farmers in both counties.
You request my opinion whether a county which does not have a cooperation agreement with another county can own and operate a lime pit in another county and can sell lime to farmers in such other county at cost.
I am of the opinion that Barron County can own and operate a lime pit in another county if such pit is within reasonable distance from the boundaries of Barron County, and such operation is necessary for the purpose of selling and distributing lime at cost to Barron County farmers, but that, absent a cooperation agreement, Barron County cannot sell and distribute lime to farmers in such other county.
A "county is a creature of the state and exists in large measure to help handle the state's burdens of political organization and civil administration" at the local level. Statev. Mutter, 23 Wis.2d 407, 127 N.W.2d 15 (1964), appeal dismissed379 U.S. 201 (1964). A county board has only such powers as are expressly conferred upon it *Page 73 
by statute or which may be necessarily implied from those expressly given. Dodge County v. Kaiser, 243 Wis. 551,11 N.W.2d 348 (1943).
Wis. Const. art. IV, sec. 22, provides:
 "The legislature may confer upon the boards of supervisors of the several counties of the state such powers of a local, legislative and administrative character as they shall from time to time prescribe." (Emphasis added.)
Section 59.873, Stats., provides:
 "The board may manufacture agricultural lime and sell and distribute it at cost to farmers and acquire lands for such purposes."
Section 59.07 (1)(a), Stats., provides in part that the county a board may:
 "(1) (a) Take and hold land sold for taxes and acquire, lease or rent property, real and personal, for public uses or purposes of any nature, including without limitation acquisitions for county . . . lime pits for operation under s. 59.873 . . . ."
In Heimerl v. Ozaukee County, 256 Wis. 151, 157, 40 N.W.2d 564
(1949), which held that then sec. 86.106, Stats., which provided that counties could construct and maintain private roadways and driveways, was unconstitutional, the court referred to then sec. 59.08 (18), Stats., which is now sec. 59.873. Stats., the lime statute quoted above, and by dicta indicated that the manufacture, sale and distribution of lime at cost to farmers was a governmental function necessary to the health, safety and welfare of the community as a whole. The conclusion was based on benefit to the community or county concerned. One of the reasons given for striking down sec. 86.106, Stats., was that the power granted was not limited to exercise within the county or municipality concerned but would permit any municipality to "enter into contracts with any county in the state."
In 36 OAG 14 (1947), it was stated that sec. 59.08 (18), Stats. (1947), would permit a county to sell lime at cost to a federal agency which would then sell to farmers at the same cost. There was no indication that sales could be to farmers of other counties. In 52 OAG 222 (1963), it was stated that a county could acquire lands outside the county but within three-fourths mile of the county line for a *Page 74 
county park; however, an express statute, sec. 27.05 (3), Stats., permitted acquisition of land outside the county but within three-fourths of a mile of the county line.
Neither sec. 59.07 (1) (a) nor sec. 59.873, Stats., expressly provide that land may be acquired outside the county for lime pits or that sales may be made to farmers operating farms not within the county. In my opinion there is no implied power to permit a county to distribute or sell lime at cost to farmers outside the county. Manufacture, distribution and sale of lime at cost to farmers within the county serve a legitimate county purpose and amount to the exercise of a proper governmental function. The county could obtain a supply by the purchase of real estate and quarry or manufacture the lime within the boundaries of the county. It is my opinion that the county can also acquire real estate in another county for the purpose of mining, quarrying, crushing or manufacturing lime to obtain an adequate supply to carry out its express statutory power of distributing and selling lime at cost to its own farmers.
In 2 McQuillin, Mun. Corp. (3rd Ed.), sec. 10.07, pp. 751-753, the following is stated:
 ". . . Extraterritorial powers of some kinds are in some states expressly conferred on municipal corporations by the state constitution, or by statutes. or charters. And the rule is well established that the legislature may confer such extraterritorial power, at least for certain purposes, unless prohibited by the state constitution. However, unless the right to exercise a power outside the boundaries has been so delegated to the municipality, the general rule is that the powers of a municipal corporation are limited by its boundaries and cannot be exercised outside thereof. There is some authority, however, for applying the general rule against extraterritorial powers only to governmental as distinguished from proprietary powers and powers not essential to the proper conduct of the affairs of the municipality." (Emphasis added.)
In 10 McQuillin, Mun. Corp. (3rd Ed.), sec. 28.05, pp. 9-10, it is stated:
 "Notwithstanding certain statements and decisions to the contrary, particularly among the older cases, likely influenced to some extent by an esteemed author on municipal corporations, *Page 75 
it is believed that the rule, supported by the weight of authority as well as by the better reasoning, is that a municipal corporation, where not expressly prohibited, may purchase real estate outside of its corporate limits, for legitimate municipal purposes, especially under a broad statutory or charter provision conferring power to purchase and hold real estate sufficient `for the public use, convenience or necessities."
Among the cases supporting these general statements of law areBecker v. The City of La Crosse, 99 Wis. 414, 75 N.W. 84 (1898),Schneider v. Menasha, 118 Wis. 298, 95 N.W. 94 (1903), andSuperior W., L. P. Co. v. Superior, 174 Wis. 257, 181 N.W. 113
(1921).
The exception to the general doctrine that a municipal corporation cannot exercise its powers beyond its own limits, as stated in the last quote from McQuillin above, is not inconsistent with the general principle that counties can only exercise those powers expressly granted or necessarily implied. In Becker, supra, p. 419, it is stated:
 "The general doctrine is clear that such corporations cannot usually exercise their powers beyond their own limits. The right to exercise extraterritorial powers can only arise by express grant of authority, as indicated in Mayor v. Moran, 44 Mich. 602, or by necessary implication from other powers granted, as is pointed out in Coldwater v. Tucker, 36 Mich. 474. And the powers so exercised must be directly within the range of corporate purposes . . . ."
In Becker it was held that a city has no power to accept a privilege, granted by the legislature of another state. to construct a highway over territory belonging to such other state.
However, even at a time when cities still exercised powers similar to the more limited powers of today's counties, the court recognized that by virtue of an express grant of authority to "purchase and hold real estate sufficient for the public use, convenience or necessities," the city "possessed, by implication, all the powers reasonably necessary to the proper exercise of such express powers, and those essential to the objects and purpose of its corporate existence." Schneider, supra, p. 301. The court concluded that such implied authority included the power to purchase real estate outside *Page 76 
corporate limits for the ordinary business function of obtaining a supply of crushed rock to be used upon the city streets, saying:
 "The rule that a city cannot exercise its governmental authority outside its limits has nothing to do with the case in hand. This court held that it cannot exercise such authority in Becker v. La Crosse, 99 Wis. 414, 75 N.W. 84. It at the same time recognized that a city may exercise its mere right to own and use property for legitimate city purposes outside its boundaries." Schneider, supra, p. 303.
In Schneider, pp. 301, 302, it is stated:
 ". . . The acquirement of a supply of crushed rock for use upon the city streets was a legitimate city purpose. That is conceded. It must be conceded, also, that to obtain such supply by the purchase of real estate and manufacturing the crushed rock therefrom within the city limits would be a legitimate exercise of corporate power. Would an act which does not involve the exercise of sovereign authority. — one in the exercise of the ordinary business functions of a city inside the city limits, — cease to be such if performed just over the boundary line or within a convenient distance from the city?"
The court held that the city had such power but stated, at p. 306, that there must be no ulterior motive involved in the acquisition and that:
 ". . . If the agents of the city should go so far from its boundary to obtain land for its use that the element of convenience would be no longer apparent, there would undoubtedly be such an abuse of authority as to render the act void . . . ."
At p. 305 of Schneider, the court stated this test:
 "In testing the question of whether a municipality has exceeded its corporate authority in going outside its boundaries in any given case, we must first determine the purpose in view. If that be found to be the exercise of police authority, or authority to govern in any sense, the conclusion must be that the end does not justify the act. If it be found to be the mere exercise of a business function, the conclusion must be that the mere act of going beyond the boundary does not necessarily involve excess of power. In determining whether corporate authority has been *Page 77 
exceeded by reason of distance from the city limits the act in question reaches, we must solve that by an appeal to reason and common sense, keeping in mind that municipal corporations, in their business matters, are governed by very much the same rules as private corporations . . . ."
In Superior W., L. P. Co. v. Superior, 174 Wis. 257,181 N.W. 113 (1921), it was held that a city may acquire real estate for a waterworks plant outside its boundaries and in another state where not prohibited by statute. At p. 299, the court stated:
 ". . . That a city may acquire and own property, including real estate, beyond its borders to enable it to perform its municipal functions or powers expressly conferred upon it, was settled in this state by the case of Schneider v. Menasha, 118 Wis. 298, 95 N.W. 94, following the decided current of authority in this country, as will fully appear by the perusal of the opinion therein. The case of Becker v. La Crosse, 99 Wis. 414, 75 N.W. 84, involved an exercise on the part of the city of La Crosse of governmental functions in the state of Minnesota, the authority to do which was of course denied. The exercise of municipal functions on the part of a municipality beyond its boundaries is an entirely different matter from the owning of real estate in its proprietary capacity so far as it may be necessary or convenient for the discharge of municipal powers and functions. Neither the law nor public policy of this state interferes with the acquirement by the city of Superior of that portion of the waterworks plant reaching beyond the boundary line of this state . . . . "
In my opinion, Barron County is not precluded from owning and operating a lime quarry in Dunn County for the purpose of selling and distributing lime at cost to Barron County farmers, simply because the quarry is in another county, unless the acquisition or its operation is otherwise unreasonable or unlawful.
Acquisition and operation of a lime pit in another county and
sales to farmers in such other county would be permissible where there was a formal joint cooperation agreement under sec. 66.30, Stats., as sec. 59.07 (11), Stats., grants to the county board the authority to:
 "Join with the state, other counties and municipalities in a cooperative arrangement as provided by s. 66.30, including the *Page 78 
acquisition, development, remodeling, construction, equipment, operation and maintenance of land, buildings and facilities for regional projects, whether or not such projects are located within the county . . . ." (Emphasis added.)
BCL: RJV