JOHN L. VALENTINE *vs.* THE ROAD DIRECTORS OF ALLEGANY COUNTY.

*County Road Directors—Powers—Bridge in Another State—Maintenance.*

The Road Directors of Allegany County, a body corporate created by Acts 1904, ch. 262, is a governmental agency charged with certain public duties, and clothed with certain powers enumerated in the act creating it, together with such other incidental powers as may be necessary to effect the purposes of its creation, and it has no power, duty or authority except such as are conferred upon it mediately or immediately by the Legislature.                                      p. 203

The statute by which the Road Directors of Allegany County, a governmental agency, was created, in terms limiting its powers, duties and obligations to the public roads and bridges of Allegany County, these cannot extend to a bridge wholly in Bedford County in Pennsylvania.                              p. 203

The Road Directors of Allegany County, a governmental agency of Maryland, has, in the absence of an express grant from the Legislature, no power to expend the public funds of

the county dedicated under the terms of Acts 1904, ch. 262, to the construction and maintenance of roads and bridges in Allegany County, on the construction of roads and bridges in another state.                    pp. 203-205

One injured by the lack of repair of a bridge which, though in another state, had previously been maintained by a governmental agency of this State created by legislative act, is presumed to have known the extent and limits of the powers of such agency, and that it exceeded its powers in appropriating funds paid by the taxpayers of the county to the rebuilding and maintenance of such bridge.                    pp. 205, 206

A municipality is a governmental agency of the State, the powers of which are limited and defined by statute, and it cannot be estopped from asserting the unlawfulness of acts of its agents which it had no power itself to perform, and which were beyond the scope of the agent's powers as fixed by public law.
                                                p. 206

*Decided June 21st, 1924.*

Appeal from the Circuit Court for Allegany County (DOUB, J.).

Action by John L. Valentine against The Road Directors of Allegany County, a body corporate. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and BOND, JJ.

*Carl G. Mullin,* for the appellant.

*Saul Praeger,* with whom were *Lloyd Lowndes* and *J. Philip Roman* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

John L. Valentine, the appellant, on July 14th, 1921, sued the Road Directors of Allegany County, in the circuit court for that county, for injuries which he claimed to have received whilst in the lawful use of a certain bridge on a public

highway in Pennsylvania in an accident said to have been due to the defective condition of the bridge.

A demurrer to the declaration which he first filed having been sustained, he filed an amended declaration to which the defendant also demurred.  That demurrer was likewise sustained, and judgment entered for the defendant, and from that judgment the plaintiff has appealed, so that the question before us is whether the averments of the amended declaration state a good cause of action.

It appears from the demurrer and from certain Public Local Laws of Allegany County, of which the Court will take judicial notice, that chapter 262 of the Acts of 1904 of the General Assembly of Maryland created a body corporate with power to sue and be sued under the name of the "The Road Directors for Allegany County," and conferred upon it certain powers and charged it with certain duties in reference to the public roads and highways of that county, stating in part that "their powers, duties and obligations with respect to the public roads in Allegany County shall be co-extensive with the powers, duties and obligations heretofore resting upon the County Commissioners of Allegany County with respect to the public roads and bridges in said county, except in so far as the same may be modified or changed by the provisions of this act."  Section 212.  It also provided, in section 213, that "The Road Directors shall adopt such system for the repairs and improvements of the roads in Allegany County as they may deem best"; and in section 216A that "The Road Directors herein provided for shall take charge and supervision of all roads and bridges in Allegany County"; and in section 216T, "the Road Directors shall have power to make rules and regulations to carry out the purposes of this act."  It also provided for raising funds by taxation for carrying out the purposes of the act, and provision is made in it for the construction and maintenance, use, relocation, alteration and closing of public highways in that county.

Included among the roads embraced in the highway system of that county is "a road leading off the Bedford road to

Hazen, Maryland, and is the only route or road by which the people of Hazen can get to Cumberland or the improved roads without making a detour of five or six miles through Pennsylvania; that at a point where the aforesaid road crosses Evitt's Creek, a bridge has been maintained by Allegany County, Maryland, for a period of about fifty years, it being supposed until ten or twelve years ago that said bridge was in Allegany County, Maryland, when it was discovered that it was located across the Pennsylvania line, although the road of which said bridge is a part runs back into Allegany County, Maryland, on both sides of the stream spanned by the bridge; that when it was discovered that the bridge was located in Pennsylvania it was necessary to rebuild and maintain it on the same location, or relocate a long stretch of expensive road, and the defendant in the year 1912 elected to and did rebuild the aforesaid bridge on the same location and maintained the same up until the date of the injuries herein complained of."

The bridge referred to was suffered to fall into disrepair and to become so weakened and unsafe that on June 15th, 1920, as the plaintiff was driving a team of horses drawing a load of lumber across it, it collapsed, "throwing the plaintiff and his team into the waters of Evitt's Creek," in consequence of which he was injured, two of his horses killed, one badly injured and his wagon damaged.

The declaration sets out these facts, and declares that it was the duty of the defendant to keep that bridge in a safe condition for public travel, and that as his injuries resulted from a breach of that duty that the defendant is answerable to him in damages for his injuries and losses.

The controlling question in the case is whether the Road Directors of Allegany County are under existing law responsible for the condition of a bridge on a public highway in Pennsylvania. The appellee is a governmental agency charged with certain public duties, and clothed with certain powers enumerated in the act creating it, together with such other incidental powers as may be necessary to effect the purposes of its creation, and it has no power, duty or authority

except such as are conferred upon it mediately or immediately by the Legislature. *Heiskell* v. *Baltimore,* 65 Md. 152; *Horn* v. *Baltimore,* 30 Md. 218; *McQuillin on Mun. Corp.,* par. 499. And this case could be disposed of by a mere reference to the statute, which expressly and in terms limits the powers, duties and obligations imposed by it upon the appellee to the public roads and bridges *in* Allegany County. For by no process of reasoning with which we are familiar can a bridge wholly within the boundaries of Bedford County, Pennsylvania, be held to be *in* Allegany County, Maryland, with which it has no physical connection at all except that supplied by a road which runs from it into Maryland.

But aside from that consideration it is obvious that the defendant in the absence of an express grant from the Legislature could have no power to expend the public funds of the county, dedicated under the terms of the act to the construction and maintenance of roads and bridges in Allegany County, to the construction of roads and bridges in another state. Certainly the same road without the sanction of both states could not at the same time be a public highway both of Maryland and Pennsylvania, and it is difficult to see under what power or authority the appellee could exercise any control or supervision over public roads and bridges in another state or how they could lawfully repair, rebuild or maintain them without an express grant of power so to do from the legislature of such state. These principles seem to be self-evident and scarcely need authority to support them, but the same question has been considered in other cases. Perhaps the leading case in which it has been decided is that of *Becker* v. *LaCross,* 99 Wis. 414, 40 L. R. A. 829, in which, to quote from the syllabus, it was held: "A city cannot accept a grant from another state to operate a toll road beyond its limits and the limits of its own state, or be held liable for defects in such road if operated by it, when it is not authorized to do so by the laws of its own state, although the toll road is made to connect with a city toll bridge that the city has constructed under authority." The facts in that

case were these: The State of Minnesota by appropriate leg-
islation authorized the City of LaCrosse, Wisconsin, to build
a toll road in Minnesota connecting with a bridge between
the two states built by lawful authority. The City of La-
Crosse accepted the grant and built and for some time main-
tained the road, although it had no express legislative sanc-
tion from the State of Wisconsin for its act. An accident
occurred through an alleged defect in the road and suit was
brought against the city by one who was injured thereby
on the theory that it was the duty of the City of LaCrosse
to maintain the road in a safe condition, and in discussing
the question of the responsibility of that city the court in that
case said in part: "The question, then, recurs: Had the
city the authority or right to accept the privilege granted it
by the State of Minnesota? We have been referred to no
case, and after a careful search we are not able to find one,
in which this precise question has been determined. Such a
decision may be in the books, but the industry of both counsel
and court has been unavailing to find it. While it may be
admitted that the maintenance of this bridge and highway
may be of material advantage to the city, and may add
largely to the commerce of its inhabitants, it cannot be said
to be of such paramount importance as to require any stretch
of legal principles to sustain that right. * * * The corpora-
tion of LaCrosse exists only by the grace of the legislative
grant of this state. As before suggested, it posseses no power
and can assume no obligations except such as may come from
the original source. To permit it to accept rights, and to
assume duties, beyond the power of its creator to enforce
or to regulate, would be an innovation we are not prepared
to sanction. From the very necessities of the situation, it
would have no power to regulate or protect its erections in a
foreign jurisdiction. The noted case of *Bailey* v. *New York,*
3 Hill, 531, and 2 *Denio,* 433, illustrates some of the compli-
cations that might arise in that regard. To permit the city,
no matter how desirable it may be, to expend its money, and
to obtain rights and privileges beyond its own limits and
beyond the limits over which its creator has jurisdiction,

would be unwise and dangerous, to say the least, and against public policy. Its acts in this regard being *ultra vires,* the municipality cannot be held liable therefor, or for failure to perform such acts, to the injury of others." The same principle was recognized in *County Commrs.* v. *County Commrs.,* 50 Md. 261, where this Court, in discussing the power of the Legislature to require the counties of Talbot and Queen Anne's to jointly contribute to the cost of erecting and maintaining a bridge over Kent Narrows in Queen Anne's County for the convenience of the inhabitants of both counties, said: "While it would not have been competent to the county to levy taxes to be expended in the construction of a road or bridge beyond its territorial limits, without the express authority of law, the bridge in question was not only authorized, but its construction and the levy of taxes to pay for it, were expressly directed by mandatory act of the Legislature." A similar question was before the Supreme Court of Appeals of Virginia in *Donable's Admr.* v. *Harrisonburg,* 104 Va. 533, 2 L. R. A. N. S. 910, in which that court said: "It is equally well-settled law that a municipal corporation is, as a general rule, restricted to its corporate limits in the exercise of its corporate powers. *Duncan* v. *Lynchburg, supra; Becker* v. *LaCrosse,* 99 Wis. 414, 40 L. R. A. 829, 67 Am. St. Rep. 874, 75 N. W. 84; *Thompson, Mayor,* v. *Moran,* 44 Mich. 602-605, 7 N. W. 180; *Tiedeman, Mun. Corp.,* par. 62; 2 *Dill., Mun. Corp.,* par. 565." And a number of cases illustrating the application of the principle are collected in a note to that case, in that report. See also *Stealy* v. *Kansas City,* 179 Mo. 400, and *McCook* v. *Parsons,* 77 Neb. 132.

Without further elaboration of the point, in our opinion the appellee had no power either to build or to maintain the bridge in Bedford County, Pennsylvania, and its acts in reference thereto were *ultra vires* and that in failing to keep it in repair it violated no duty to the appellant because it owed him none.

But the appellant contends that even if the act of the appellee in rebuilding and maintaining the bridge was *ultra*

*vires*, that nevertheless the appellee is estopped from setting up that defence in this action, because the appellant "could not be presumed to be cognizant of the excess of power." But as the appellee is a governmental agency created by an act of the Legislature, the presumption is that the appellant did know both the extent and the limits of its powers, and that he did therefore know that it exceeded its powers in appropriating funds paid by the taxpayers of Allegany County to the rebuilding and maintenance of a bridge in another state. For as said by Chief Judge Boyd, speaking for the Court in *Mealey* v. *Hagerstown*, 92 Md. 753: "Every one dealing with the officers and agents of a municipal corporation is charged with knowledge of the nature of their duties and extent of their powers; and hence a municipal corporation may set up a plea of *ultra vires* or its own want of power under its charter or constituent statute, to enter into a given contract or to do a given act in excess of its corporate powers and authority. 15 *Am. and Eng. Ency. of Law*, 1100 and 1101, where many authorities are cited, including *Baltimore* v. *Eschbach*, 18 Md. 276; *Horn* v. *Baltimore*, 30 Md. 218; and *Baltimore* v. *Musgrave*, 48 Md. 272." The rule as thus stated not only appears to be almost universally recognized in American courts (*McQuillin*, *Mun. Corp.*, par. 2637; 28 *Cyc.* 280), but it is supported by every dictate of logic and sound sense. A municipality is no more than a governmental agency of the state, the powers of which are limited and defined by statute, and certainly it cannot be estopped from asserting the unlawfulness of acts of its agents which it had no power itself to perform and which were beyond the scope of its agent's powers as fixed by public law, which all affected by the act were presumed to know, since as stated in *Reese on Ultra Vires*, par. 192: "Every person is presumed to know the nature and extent of the powers of municipal officers, and therefore cannot be deemed to have been deceived or misled by acts done without legal authority." But it is not clear that the doctrine of estoppel has any application in this case at all, for if the appellee had no control over the bridge, and manifestly it had none, then it owed no

duty to the appellant to maintain it, and as it could not by its own unlawful and unauthorized act create a duty where none existed, the appellant cannot complain because it did not do that which under the law it had no right to do.

For the reasons stated we concur in the ruling of the lower court on the demurrer to the amended declaration and will affirm the judgment appealed from.

*Judgment affirmed, with costs to the appellee.*