## THOMAS M. GONTRUM ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 33, April Term, 1943.]

*Decided December 14, 1943.*

The cause was argued before SLOAN, C. J., DELA-PLAINE, COLLINS, MARBURY, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*Louis J. Jira,* with whom was *John B. Gontrum* on the brief, for the appellants.

*Morris A. Baker, Deputy City Solicitor of Baltimore City,* with whom was *F. Murray Benson, City Solicitor of Baltimore City,* on the brief, for the appellee.

BAILEY, J., delivered the opinion of the Court.

This is an appeal from a decree dismissing the amended bill of complaint filed by the appellants against the Mayor and City Council of Baltimore. The relief prayed for in the bill was that an agreement dated February 19, 1931, executed by Thomas M. Gontrum, one of the appellants, be annulled and set aside and that the Mayor and City Council of Baltimore at once begin the removal of its sewerage pipes and drains from the right of way and easement for sewers over the land of the appellants granted by said agreement, or pay to the appellants such damages as would be fair compensation for the land in the said right of way. The City answered the bill and thereafter testimony was taken in open court.

Thomas M. Gontrum, on July 26, 1926, acquired title to two tracts of unimproved land in Baltimore City containing in the aggregate approximately sixty acres. On February 23, 1933, Thomas M. Gontrum conveyed all his real estate in Baltimore City, including the sixty acres, to John B. Gontrum and Mary von W. Gontrum, his wife. The record is vague as to who has the beneficial interest in the land, but this is immaterial for the decision of the case.

Ordinance No. 939, of the Mayor and City Council of Baltimore, approved on March 20, 1930, provided for the condemning, opening, widening and grading of Cedonia Avenue from Belair Road to Bowley's Lane. Cedonia Avenue, as proposed by this ordinance, would cross the Gontrum property, taking a strip of land sixty feet in width and approximately three hundred and thirty-four feet in length.

Sometime in January, 1931, one Glover, who was employed by the City as an engineering aide in the Sewer Department, whose official title was Land Surveyor and whose duties were to secure rights of way for sewers,

approached Thomas M. Gontrum and requested from him a twenty-foot right of way for a sewer, within the limits of the proposed sixty-foot street to be known as Cedonia Avenue. Gontrum discussed the matter with his brothers, John B. Gontrum and Edwin K. Gontrum, both of whom were lawyers. Glover stated to them that the City would not compensate Thomas M. Gontrum for the sewer right of way, but that he would suffer no abatement of compensation when the street was finally condemned and damages awarded, by reason of the conveyance of the twenty-foot sewer right of way. The matter was also discussed by the Gontrums, with Mr. von Wyszecki, an assistant city solicitor, who was the father-in-law of John B. Gontrum. Glover disclosed to the Gontrums that the City contemplated the opening of Cedonia Avenue and gave them the ordinance number. There is some difference in the testimony of the Gontrums and the testimony of Glover as to what Glover said as to the time when Cedonia Avenue would be opened by the City, but, as we see the case, this is unimportant. The Gontrums made an independent investigation at the City Hall and, having satisfied themselves that the opening ordinance had been passed and that the City contemplated the opening of Cedonia Avenue, Thomas M. Gontrum then executed the right of way agreement. The consideration named in said agreement is $1, and nowhere in the agreement is there any mention of the opening of Cedonia Avenue and the opening thereof is not made a part of the consideration of the grant. The plat attached to the same, however, shows the sewer right of way in the bed of Cedonia Avenue. The City promptly laid the sewer in the right of way so granted. It is clear from the evidence in this case that Glover and von Wyszecki, as well as the Gontrums, believed the rights of way for Cedonia Avenue would be promptly acquired and the street promptly opened. However, the City has acquired only one piece of property for the opening of Cedonia Avenue under said ordinance, but it is admitted that the ordinance cannot now be re-

pealed and that the City will eventually open the said street through the property of the appellants. No effort has been made by the City to condemn the sixty-foot right of way through the property of the appellants or to agree with them on proper compensation therefor. After waiting almost nine years, this suit was instituted on January 27, 1940.

It is contended by the appellants that Glover represented to them that Cedonia Avenue would be opened by the City within a very short time, that this representation was confirmed by von Wyszecki, and that it was in reliance upon these representations that the sewer right of way agreement was signed. The bill does not charge actual fraud on the part of the City or its representatives, but relief is sought on the ground that these representations amount to constructive fraud. But with this contention we cannot agree. It is the general rule that statements as to future events, as to expectations and probabilities, as to what will be or is intended to be done in the future, or mere expressions of opinion about what will occur in the future, do not constitute fraud even though they turn out to be false, at least where they are not made with intent to deceive, and where the parties have equal means of knowledge or the subject is equally open to the investigation of both, and an examination has not been fraudulently prevented. They are generally regarded as mere expressions of opinion or mere promises or conjectures which must have been understood by the other party to be such and on which he has no right to rely. 23 *Am. Jur., Fraud and Deceit,* pp. 794-796; *Boulden v. Stilwell,* 100 Md. 543, 60 A. 609; *McAleer v. Horsey,* 35 Md. 439; *Johnson v. Maryland Trust Co.,* 176 Md. 557, 6 A. 2d 383.

Both Glover and von Wyszecki are subordinate city officials, one in the Sewer Department and the other in the Law Department, and neither of these departments is charged with the duty of opening streets. Any statements made by them relative to the opening of Cedonia Avenue could only have been expressions of opinion on

their part, and, under the above authorities, could not amount to fraud.

But there is another and more cogent reason why the appellants are not entitled to relief in this case. It is a fundamental principle of law that all persons dealing with the agent of a municipal corporation are bound to ascertain the nature and extent of his authority. *Dillon's Municipal Corporations*, 5th Ed., Sec. 777. A municipal corporation is not bound by a contract made in its name by one of its officers or by a person in its employ, although within the scope of its corporate powers, if the officer or employee had no authority to enter into such a contract on behalf of the corporation. 38 *Am. Jur., Municipal Corporations*, p. 183.

Section 1268 of *McQuillin's Municipal Corporations*, 2d Ed., states that "The general rule is well settled and is constantly enforced that one who makes a contract with a municipal corporation is bound to take notice of limitation of its powers to contract and also of the power of the particular officer or agency to make the contract."

This principle has been expressed and applied by this court in a long line of cases, beginning with *Baltimore v. Eschbach*, 18 Md. 276, in which the court, explaining the reasons for the rule, said at page 282: "Although a private agent, acting in violation of specific instructions, yet within the scope of a general authority, may bind his principal, the rule, as to the effect of a like act of a public agent, is otherwise. The city commissioner, upon whose determination to grade and pave, the contract was made, was the public agent of a municipal corporation, clothed with duties and powers, specially defined and limited, by ordinances bearing the character and force of public laws, ignorance of which can be presumed in favor of no one dealing with him on matters thus conditionally within his official discretion. For this reason, the law makes a distinction between the effect of the acts of an officer of a corporation, and those of an agent for a principal in common cases; in the latter the extent of authority is necessarily known only to the

principal and the agent, while, in the former, it is a matter of record in the books of the corporation, or of public law. A municipal corporation cannot be held liable for the unauthorized acts of its agents although done *officii colore*, without some corporate act of ratification or adoption; and, from considerations of public policy, it seems more reasonable that an individual should occasionally suffer from the mistakes of public agents or officials, than to adopt a rule, which, through improper combinations and collusion, might be turned to the detriment and injury of the public."

In *Baltimore v. Reynolds*, 20 Md. 1, at pages 10 and 11, 83 Am. Dec. 535, the court repeats the above quotation from *Baltimore v. Eschbach, supra,* and then quotes from *Story on Agency,* Sec. 307a, as follows: "In cases of public agents, the government or other authority, is not bound unless it manifestly appears that the agent is acting within the scope of his authority, or he is held out as having authority to do the act, or is employed in his capacity as a public agent to make the declaration or representation for the government. Indeed this rule seem indispensable, in order to guard the public against loss and injuries arising from the fraud or mistake, or rashness and indiscretion of their agents."

In *State v. Kirkley,* 29 Md. 85, at page 110, it is stated that "No principle of the law relating to municipal corporations is more firmly established than that those who deal with their agents or officers must, at their peril, take notice of the limits of the powers both of the municipality and of those who assume to act as its agents and officers; and in no State has this principle been more frequently applied or more rigidly enforced than in Maryland." And the court continues at page 111 of 29 Md.: "The reasonableness and necessity of the rule rests upon the ground that these bodies corporate are composed of all the inhabitants within the corporate limits; that the inhabitants are the corporators; that the officers of the corporation, including the legislative or governing body, are merely the public agents of the corporators; that their duties and powers are prescribed

by Statutes and Ordinances, and every one, therefore, may know the nature of these duties and the extent of these powers. Hence it is, that the plea of *ultra vires* is used by those who are sued by such corporations, and the corporation itself may use it as a defense, or, in a proceeding like the present, may assert, as plaintiff, the invalidity of such acts, either of itself or its agents and officers, as are the subject of complaint in this case. If this were not so, it would become impossible, in practice, to restrain the acts of such corporations and their officers within the limits of their powers."

Other cases to the same effect are *Horn v. Baltimore*, 30 Md. 218; *Baltimore v. Gill*, 31 Md. 375; *Baltimore v. Musgrave*, 48 Md. 272, 30 Am. Rep. 458; *Mayor, Etc., of Baltimore v. Keyser*, 72 Md. 106, 19 A. 706; *Mealey v. Hagerstown*, 92 Md. 741, 48 A. 746; *Packard v. Hayes*, 94 Md. 233, 51 A. 32; *Western Md. R. R. Co. v. Blue Ridge Co.*, 102 Md. 307, 62 A. 351; *Valentine v. Road Directors*, 146 Md. 199, 126 A. 147; *Howard County Com'rs v. Matthews*, 146 Md. 553, 127 A. 118; *Lipsitz v. Parr*, 164 Md. 222, 164 A. 743.

Assuming that there was a definite promise or representation on the part of Glover that the City would open Cedonia Avenue through the land of the appellants within a definite time, the appellants in dealing with him were charged with knowledge of the nature of his duties and the extent and limitations of his powers. He was a subordinate official in the Sewer Department of the City and the appellants, in dealing with him in the matter of the sewer right of way, could not assume that he had any power to bind the City in any way in connection with the opening of streets, a complex matter over which his department had no control. And the same is true as to any promise, either express or implied, which may have been made to the appellants by von Wyszecki, an assistant in the office of the City Solicitor.

But it is contended by the appellants that the City is now estopped from asserting that the promises of its agents were beyond the scope of their power and authority, because it is now enjoying the benefits accruing

to it under the sewer right of way agreement, without having compensated the appellants therefor. However, the facts in this case are that the City requested the right of way agreement, with the distinct understanding that it would not pay anything for the grant, that the agreement was executed by Thomas M. Gontrum, after an independent investigation by him and his two brothers, both of whom were capable and experienced lawyers, and that no conditions precedent or subsequent were included in the agreement.

Generally, no estoppel as applied to a municipal corporation can grow out of dealings with public officers of limited authority where such authority has been exceeded, or where the acts of its officers and agents were unauthorized or wrongful. No representation, statement, promises or acts of ratification by officers of a public corporation can operate to estop it to assert the invalidity of a contract where such officers are without power to enter into such a contract on behalf of the corporation. 38 *Am. Jur.*, p. 205; *State ex rel. Workman v. Goldthait*, 172 Ind. 210, 87 N. E. 133, 19 Ann. Cas. 737; *Valentine v. Road Directors, supra.*

In *Reese on Ultra Vires*, paragraph 192, it is stated: "Every person is presumed to know the nature and extent of the power of municipal officers, and therefore cannot be deemed to have been deceived or misled by acts done without legal authority."

It is our conclusion that the doctrine of estoppel does not apply and that the City is under no obligation to compensate the appellants for the sewer right of way now used by it until such time as the Mayor and City Council of Baltimore, acting in accordance with law and through its legally constituted agents and officers, proceeds with the opening of Cedonia Avenue and acquires the sixty-foot strip of land owned by the appellants.

Under the authorities cited and for the reasons assigned, we concur in the conclusion of the court below, and the decree will be affirmed.

*Decree affirmed, with costs to the appellee.*