THE INTER-CITY LAND COMPANY *v.* BALTIMORE COUNTY, MARYLAND

[No. 18, September Term, 1958.]

*Decided October 27, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*J. Elmer Weisheit, Jr.,* for appellant.

*C. John Serio* and *Walter R. Haile,* with whom were *Francis T. Peach* and *Richard C. Murray* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

In this action for breach of contract by Baltimore County,

the docket entries disclose a maze of pleadings. The plaintiff, appellant here, filed a declaration on May 19, 1955, alleging that for several years prior to 1950 there were negotiations between it and certain county officials in regard to its development plan for a tract of land owned by it, known as "Section 'A' Harford Park", and particularly in regard to the location and construction of a storm drainage channel and sanitary sewer across the property in or near the bed of Herring Run, which crosses the property in a meandering course. It was alleged that in February and March 1950, the "parties did mutually agree and contract" as to the location of roads and other matters, including an undertaking that: "Defendant was to straighten, align, widen and deepen Herring Run where it passed through the property of the Plaintiff so as to contain it completely within a forty (40) foot right of way to be granted by Plaintiff at a then agreed location through the property of the Plaintiff with all dirt excavated from the new stream bed location to be placed in the old stream bed as fill dirt and such operation was to be completed not later than August 24, 1950 * * * ." Plaintiff agreed to pay for "all necessary engineering, surveying and replatting done to accomplish the above aims." In 1951, the "newly elected and appointed officials acting for and on behalf of the Defendant did acknowledge and reaffirm the obligation and commitment of the Defendant under the aforesaid contract", but "arbitrarily, erroneously, and capriciously" claiming that the agreement could not be carried out as planned, sought "a new solution to the differences of the parties", to which the plaintiff never agreed. In the spring of 1954 "the Defendant and its agents and employees did acknowledge in writing that it intended to honor its commitment * * *, however, promptly thereafter the Defendant did repudiate and refuse to carry out such part of the agreement as had not been performed by the Defendant at that time and instead decided to institute condemnation proceedings * * *." In the fall of 1954 "the Defendant * * * informed the Plaintiff * * * that it intended to neither condemn the land involved nor straighten and realign Herring Run nor do anything else whatsoever in recognition of the outstanding agree-

ment of the parties * * *." For breach of the contract the plaintiff claimed damages of $350,000.

The defendant first filed a motion craving oyer of the contract, which the court first granted and then denied. Upon demand for particulars, amplified upon exception taken, the plaintiff answered that to establish the contract it relied upon (1) a letter written to it by William F. Neale, Chief Engineer of the Metropolitan District of Baltimore County, dated March 10, 1950, and accepted by it; (2) the knowledge of and participation in prior discussions, during the period of negotiation, by the then elected County Commissioners and various other appointed officials; and (3) a letter from counsel for the County Commissioners dated April 7, 1954, stating "This office has been informed that the County is prepared to permit the development of Harford Park in accordance with an outline approved by Mr. William F. Neale, former Chief Engineer of Baltimore County, as set forth in a letter * * * dated March 10, 1950."

The defendant then filed a demurrer to the declaration as particularized, alleging, among other things, that the declaration contained no allegation of a binding contract "upon any subject matter as to which the Defendant has legal power to contract" or that the alleged contract made by William F. Neale on March 10, 1950, was "executed by or in any manner approved by the Defendant, the County Commissioners of Baltimore County, as a municipal corporation or otherwise", and that the alleged contract was *ultra vires*. Upon hearing, the demurrer was overruled.

The defendant then filed a number of pleas, of which the first was a plea of limitations in the stock form. The plaintiff filed a replication which, among other matters, alleged that "the allegations contained in paragraph 1 of the Pleas are denied and strict proof thereof is demanded and even if true said fact is immaterial to this cause of action." The defendant demurred to the replication. The plaintiff sought leave to amend its replication, which was granted. It filed an amended replication alleging, among other things, that "it is true the cause of action did not originally arise within three years before the filing of this suit; however, the contract be-

tween the parties entered into in the months of February and March of 1950 required certain performances by each of the parties to this litigation and each of the parties has partially fulfilled same, and, subsequently, each has acknowledged the original contract as binding between them." The defendant demurred again to the amended replication.

The plaintiff again sought leave to amend its amended rep· lication to the first plea, and, by leave of court, filed a partially amended replication simply alleging that "the cause of action did accrue within three years from the date of this suit." The defendant moved to strike the partially amended replication. When the matter came on for hearing, the plaintiff agreed to the striking of the petition and partially amended replication. The court then sustained the demurrer to the amended replication. A petition to further amend the replication was denied, and the court, on February 5, 1958, entered judgment in favor of the defendant for costs. The appeal is from that judgment.

The trial court evidently took the view that the amended replication admitted the running of the statute on the original obligation, but relied upon part performance and an acknowledgment within the period of three years prior to suit. He held that the allegations were insufficient to show part performance and that the letter of April 7, 1954, did not toll the statute. The appellant contends that the contract was indivisible, and that the appellee could not rely upon its own failure to perform before August 24, 1950, under all the circumstances, including acquiescence by the appellant in an extension of time. To the argument that the breach occurred in 1951, when changes in the original plans were suggested, it replies that it paid for services looking towards a modification of the proposed plan as late as 1954. It argues there was no final repudiation by the County until 1954, and also urges that the County's actions raised an estoppel, by lulling the plaintiff into inaction. The appellee counters that the defense of estoppel was not raised under the pleadings.

We find it unnecessary to discuss the points raised by the demurrer to the amended replication to the plea of limitations, because we think the demurrer to the declaration should have

been sustained in the first instance. It is true that the appellee did not appeal from the judgment in its favor. Certainly, it could not have appealed from the ruling on the first demurrer without submitting to final judgment, and it could not have appealed from the final judgment in its favor. *Coates v. Mackey,* 56 Md. 416, 420; *Riley v. Naylor,* 179 Md. 1, 8. Having demurred to the declaration, as particularized, we think it may properly urge the incorrectness of the court's adverse ruling thereon after final judgment. *Kikas v. Baltimore County,* 200 Md. 360, 363; Rule 887 of the Maryland Rules; Rule 345 d of the Maryland Rules; Poe, *Pleading and Practice* (Tiffany's ed.) § 707.

The declaration, as particularized, relies primarily upon a letter from the Chief Engineer of the Metropolitan District of Baltimore County dated March 10, 1950. The letter is not offered as an exhibit, although it is said to contain "a formal written offer to the plaintiff", which was accepted by it. Although it is alleged that named individuals, who were presumably the then County Commissioners, "did participate at different times" in the negotiations, there are no allegations that the alleged contract was authorized or confirmed by the then County Commissioners, as the governing body of the municipality. It is generally recognized that nothing short of action by Commissioners at a legal meeting and as a Board can bind a municipality. See McQuillin, *Municipal Corporations,* § 29.15. The letter is described as "the ultimate agreement and contract". It is, of course, elementary that one who deals with an officer of a municipality is charged with knowledge of the extent and limitation of his power. *Gontrum v. City of Baltimore,* 182 Md. 370. The duties of the Chief Engineer were set forth in sec. 278, Code of Public Local Laws of Baltimore County (1948 ed.). While the Chief Engineer was given general supervision of the Department of Public Works and engineering problems, the County Commissioners were given "full and complete authority to reverse, alter or amend in any way, any decision of the Chief Engineer * * *." It would appear that, in the matter of a storm water drain, the County Commissioners were given "full charge and control" under sec. 291, and that

the Roads Engineer would have the primary responsibility for approval of such plans. Sec. 291 (10) provides: "All contracts made by the Commissioners for any work under this sub-title shall be reduced to writing and all payments thereunder shall be subject to approval of the Roads Engineer as to work done under the contract."

These provisions have particular reference to cases where the County undertakes to pay a contractor for work done, not to a commitment by the County to do the work itself. Sec. 291 (12) seems to deal directly with the situation presented in the instant case, and reads: "To encourage property development in Baltimore County, the Commissioners, in their discretion, may assist developers or other property owners in the construction of roads, drains and other similar structures. Such assistance may be in the form of a contribution of a part of the cost of the work or by the furnishing of labor to assist in the construction. Such assistance, in whatever form, shall not exceed one-third of the total actual cost of construction. No contribution shall be allowable for any grading or engineering costs and same shall not be considered in the grant of any assistance. Application for assistance must be in writing addressed to the Commissioners and fully describing the nature of the project for which assistance is requested. No assistance, in any form, shall be granted except by and with the approval of the Roads Engineer of Baltimore County. Nothing herein shall be construed as requiring any contribution by the Commissioners to any person, firm or corporation, and any contribution allowed shall only be available in exact accordance with the terms and conditions of the grant, and subject to such general rules and regulations as may be promulgated with respect thereto by the Commissioners."

Quite apart from the lack of allegations of an application in writing to the Commissioners for assistance, or approval by the Roads Engineer, or any corporate action by the Commissioners, it seems clear that the alleged commitment on its face violates the limitation that assistance to developers shall not exceed one-third of the actual cost of construction. For

this reason, if for no other, we must hold that the alleged contract was *ultra vires*.

The appellant relies upon subsequent ratification, in that, "newly elected and appointed officials acting for and on behalf of the Defendant did acknowledge and reaffirm the obligation", but this seems to be contradicted by the next statement that these officials "did conclude that the aforesaid realignment of Herring Run could not be effected". The somewhat equivocal letter in 1954 from counsel for the County, as to what his office had been "informed", could hardly be termed a ratification. The short answer to the argument is, that if the alleged agreement was *ultra vires*, as we hold it was, ratification could not save it. If we assume, without deciding, that the question of estoppel was properly raised below, it is well settled that actions of County officials beyond the scope of their authority cannot bind the County. *Gontrum v. City of Baltimore, supra; Roland Elec. Co. v. Baltimore* 210 Md. 396, 414.

*Judgment affirmed, costs to be paid by the appellant.*