THE MAYOR AND CITY COUNCIL OF HAVRE DE GRACE, ET AL. V. K. HOVNANIAN HOMES OF MARYLAND, LLC, ET AL., No. 796, Sept. Term 2018

**HEADNOTES:**

MUNICIPAL CORPORATIONS>PUBLIC CONTRACTS>EXECUTIVE POWER

The power to enter into contracts with a municipal corporation, like the City of Havre de Grace, is an executive power. The City of Havre de Grace's charter requires that a contract regarding water and sewer systems and regarding roads be entered into by the Mayor, or a subordinate executive branch official, on behalf of the City of Havre de Grace.

Circuit Court for Harford County
Case No. 12-C-12-3214 OC

_____

THE MAYOR AND CITY COUNCIL OF
HAVRE DE GRACE, ET AL.

v.

K. HOVNANIAN HOMES OF MARYLAND,
LLC, ET AL.

_____

Friedman,
Shaw Geter,
Zarnoch, Robert A.
(Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Friedman, J.
_____

Filed: May 1, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

K. Hovnanian Homes of Maryland, LLC ("K. Hovnanian") proposed to enter into a recoupment agreement with the City of Havre de Grace by which K. Hovnanian would build the infrastructure necessary to the development of its parcel and to the development of two adjoining parcels. Under the proposed recoupment agreement, the City would reimburse K. Hovnanian for the infrastructure improvements attributable to the adjoining parcels when the lots within those adjoining parcels were sold to the eventual homeowners. The infrastructure that K. Hovnanian proposed to build fell into two categories: (1) water and sewer lines; and (2) roads. The City's legislative branch—the City Council—approved the recoupment agreement, but the City's executive branch—led by the Mayor—did not. The City claims that the recoupment agreement was not properly entered into and is, therefore, not a binding agreement. K. Hovnanian, however, seeks to have us enforce the recoupment agreement, despite the Mayor's refusal to approve it. Thus, the essential questions are how the City enters into contracts to provide these two categories of infrastructure improvements and whether, in this instance, it did.

## FACTS[1]

K. Hovnanian and the City of Havre de Grace's relationship began in 2005 and revolves around 134 acres of farmland that was subdivided into three parcels—Parcels 1, 2, and 3. Of the three, only Parcel 1 had direct access to public roads. As a result, a Public

---

[1] These facts are condensed from our previous unreported opinion in this case: *K. Hovnanian Homes of Maryland, LLC, et al. v. The Mayor & City Council of Havre de Grace, et al.*, No. 1214, Sept. Term 2015, 2017 WL 5054229 (Md. Ct. Spec. App. Nov. 3, 2017).

Works Agreement was entered into, which contemplated infrastructure improvements by K. Hovnanian on Parcel 1. Because the improvements would ultimately provide roadway access and utility connections for future homeowners of Parcels 2 and 3, the City and K. Hovnanian began negotiations to allow K. Hovnanian to recoup a portion of the infrastructure costs from owners of lots in Parcels 2 and 3.

K. Hovnanian sent a proposed recoupment agreement to the City in September 2010 stating that the "Phase 1 infrastructure" completed by K. Hovnanian, including the "installation of access and emergency roads, water and sewer lines, and storm water management ponds," would benefit Parcels 2 and 3. K. Hovnanian agreed to construct and dedicate public access roads to Parcels 2 and 3 and permit connections to the water and sewer utilities and the use of the storm water management facilities in Parcel 1, upon "acknowledg[ment]" from the City that it would be "inequitable to impose all such costs on [K. Hovnanian]." The agreement further conditioned that the City would "impose and collect the recoupment fee … from the owner(s) of Parcels 2 and 3 at the same time a building permit application for new construction … is submitted" and that "[n]o property … [would] be allowed to utilize the Phase 1 Infrastructure unless the applicable recoupment fee … is first paid to the city."

On October 4, 2010, the proposed recoupment agreement was presented to the City Council, which approved it by a unanimous vote. The last paragraph of the agreement was then modified to read:

> The City Council of Havre de Grace has approved this Recoupment Agreement, and authorized the Mayor to sign the

2

Agreement, by affirmative vote at the meeting of the City Council on October 4, 2010.

Despite the City Council's unanimous approval, the Mayor declined to sign the recoupment agreement. Following the City Council's approval, residential lots were developed on Parcel 3 and building permits were issued but the City did not collect the recoupment fees.

## PROCEDURAL HISTORY

K. Hovnanian filed a complaint against the City in the Circuit Court for Harford County to compel the execution and recordation of the recoupment agreement. K. Hovnanian's theory of the case was that the parties had sufficiently executed the recoupment agreement and were bound by it. The circuit court disagreed and granted summary judgment to the City under the theory that the recoupment agreement was to have been approved through the City's legislative process—via ordinance or resolution—and that process was incomplete without the Mayor's approval. We vacated, noting that the circuit court's findings were inconsistent with the Charter provisions.[2]

On remand, the parties once again filed cross-motions for summary judgment. This time the circuit court declared that the recoupment agreement was a binding and enforceable contract solely upon the City Council's approval. The City appealed.

---

[2] This Court, in reviewing only the grounds relied upon by the circuit court in granting summary judgment, held that neither of the Charter sections relied upon by the circuit court (§§ 19, 34) expressly required the Mayor's signature.

3

## BACKGROUND

### I.    HAVRE DE GRACE CHARTER GENERALLY[3]

Havre de Grace, having been incorporated in 1785, is one of the oldest cities in Maryland.[4] MARYLAND MUNICIPAL LEAGUE, MARYLAND'S 157: THE INCORPORATED CITIES AND TOWNS 166 (Linda M. Burrell, ed. 2000). The Havre de Grace City Charter creates a Mayor and City Council form of government, Charter, § 2, with all elected officials serving two-year terms. Charter, §§ 17; 22(A). The Mayor is the chief executive officer and supervises the City, its employees, and its property. Charter, § 18. The Mayor is responsible for seeing that the laws of the City are faithfully executed. Charter, § 18(B). The Charter also identifies seven municipal agency heads, each of whom are appointed by the Mayor and who serve subject to the Mayor's approval: the Director of Administration, Charter, §§ 46-48; the City Attorney, Charter, § 49; the Chief of Police, Charter, §§ 50-52; the Director of Public Works, Charter, §§ 62-63; the Director of Planning, Charter, §§ 79- 80; the Director of Finance, Charter, §§ 81-82; and the Director of Economic Development, Charter, §§ 83-84.

---

[3] The City of Havre de Grace Charter can be found at https://ecode360.com/9065514 [https://perma.cc/8UA2-KBW5].

[4] Havre de Grace's charter predates the adoption of Article XI-E of the Maryland Constitution but is now governed by it. Under Article XI-E, municipalities are "recognized equally under state law" and are granted the power to legislate on matters of local concern and their government. MARYLAND'S 157: THE INCORPORATED CITIES AND TOWNS 3, 6-7 (Linda M. Burrell, ed. 2000); see Art. XI-E, § 1 (stating that "the General Assembly shall act in relation to the incorporation, organization, government, or affairs of any such municipal corporation only by general laws which shall in their terms and in their effect apply alike to all municipal corporations").

The City's legislative branch is its City Council, which is made up of six members. Charter, § 21. The City Council may legislate on a broad variety of topics regarding municipal government. Charter, § 33 ("The City Council shall have power to pass all ordinances and resolutions, not contrary to the laws and Constitution of the United States and the State of Maryland, as [it] may deem necessary for good government and benefit of the City."); § 34. Ordinances passed by the City Council can be approved or vetoed by the Mayor and a mayoral veto may be overridden. Charter, § 19 (setting up procedure for passing ordinances and resolutions, procedure for veto, and procedure for veto override).

The Havre de Grace City Charter is typical of a strong mayor system and emphasizes the separation of legislative and executive powers. *See* MARYLAND'S 157: THE INCORPORATED CITIES AND TOWNS 9 (describing the characteristics of a strong Mayor/Council form of government); *see also* H. George Frederickson et al., *The Changing Structure of American Cities: A Study of the Diffusion of Innovation*, 64 PUB. ADMIN. REV. 320, 326 (2004) ("Patterns of political separation of powers and checks and balances usually accompany the trend toward enhanced mayoral powers between the mayor and the council."). Under this government structure, the Mayor is "separate from the council" and is the Chief Executive Officer of the administrative branch, while the City Council serves as the legislative body with "power to pass and create resolutions and ordinances." MARYLAND'S 157: THE INCORPORATED CITIES AND TOWNS 9; Charter, § 34(A). *See also* DON L. BOWEN & ROBERT S. FRIEDMAN, LOCAL GOVERNMENT IN MARYLAND 59-62

(1955) ("Characteristic of the mayor and council form is the separation of power and coordinate status of legislative and executive departments.").[5]

## II.  CHARTER PROVISIONS RELATED TO WATER AND SEWER LINES

The Havre de Grace City Charter contains several provisions specifically governing water and sewer lines. First, § 68 of the Charter gives the City general powers over the construction, operation, and maintenance of the sewer and water system:

The City shall have the power to:

A.  Construct, operate[,] and maintain a water system and water plant.

B.  Construct, operate[,] and maintain a sanitary sewerage system and a sewage treatment plant.

C.  Construct, operate[,] and maintain a stormwater drainage system and stormwater sewers.

D.  Construct, maintain, reconstruct, enlarge, alter, repair, improve, or dispose of all parts, installations, and structures of the above plants and systems.

E.  Have surveys, plans, specifications[,] and estimates made for any of the above plants and systems or parts thereof or the extension thereof.

---

[5] There are a few ways in which the Havre de Grace City Charter involves the Mayor in the legislative process, including: setting city council agendas, presiding over city council meetings, and voting to break council ties, Charter § 18(A); approving (or vetoing) Ordinances, Charter, § 19, and preparing and introducing the annual budget, Charter, § 37. These important incursions by the executive on the legislative branch do not undermine the fundamental point that the Charter creates a separation of powers. *See generally Judy v. Schaefer*, 331 Md. 239, 261-64 (1993) (holding that Governor's involvement in State budget process does not violate State separation of powers).

> F.     Do all things it deems necessary for the
>         efficient operation and maintenance of the
>         above plants and systems.

Charter, § 68. Section 69 of the Charter gives the City the power to "extend its water or sewerage systems beyond the City limits."[6] We think it is reasonably plain that when the Charter uses the phrase "sewerage systems" in § 69 it is including both the sanitary sewer system of § 68(B) and the stormwater sewer system of § 68(C). Moreover, the Charter authorizes the City Council to pass legislation regarding "sewers and sewer service" and "water service." Charter, §§ 33; 34(A). This legislative power, however, is "not to be construed as limiting the powers of the City to the subjects mentioned or requiring that the City pass or create resolutions or ordinances concerning" the subjects mentioned in § 34(A). Charter, § 34(B). Suffice it to say, the City has plenary powers with respect to its water and sewer systems.

The critical section for our present purposes, however is § 70, which provides in full:

> The Mayor and City Council may enact Ordinances providing for the regulations and control of waters and sewers. In addition, the Mayor and City Council may enter into contracts for the purpose of providing water and sewer services to new service areas. Such contracts may provide for advance payment of capital cost recovery charges, the construction of capital improvements to water and sewer facilities, and for crediting such advance payments and the value of such capital improvements to capital cost recovery charges which become payable in the future.

---

[6] Pursuant to Resolution No. 244, passed by the City Council in 2004, the City annexed the K. Hovnanian property and enlarged the boundaries of the City to include the annexed property.

Charter, § 70. Our goal is to understand and effectuate the intention of the framers of this provision. *Blackstone v. Sharma*, 461 Md. 87, 113-14 (2018) (discussing statutory interpretation generally); *see O'Connor v. Baltimore Cty.*, 382 Md. 102, 113 (2004) (holding that "[l]ocal ordinances and charters are interpreted under the same canons of construction that apply to the interpretation of statutes"). We begin by noting that the phrase "Mayor and City Council," appears twice in this section and is a defined term in the Charter, which means the City government. *See* Charter, § 1 ("The citizens of the City of Havre de Grace, Harford County, Maryland, are hereby made a body Corporate under the name the 'Mayor and City Council of Havre de Grace' and by that name may have all the powers provided by law to a municipal corporation."). Thus, it is an error to read § 70 as if it says that the Mayor can do something or that the City Council can do something else. Rather, § 70 provides the City of Havre de Grace with two powers. In the first sentence, § 70 says that the City can "enact Ordinances for the regulation and control of waters and sewers." In the second sentence, § 70 says that the City "may enter into contracts for … providing water and sewer services to new service areas." We will explore these two powers created by the two sentences of § 70 next.

A.    Ordinances Providing for Regulation and Control of Water and Sewer

We begin by exploring the way in which the City of Havre de Grace adopts ordinances concerning water and sewer. The legislative process by which the City enacts ordinances is well-understood. The introduction of an ordinance requires a majority voice vote of the City Council and requires at least four (out of six) affirmative votes by the

8

members of the City Council for adoption on the first and second reader, which, unless the rules are suspended, must occur on separate days. Charter, § 19(A). Enacted ordinances are attested to by the Director of Administration and delivered to the Mayor for approval or veto. If the veto is overridden or the Mayor fails to act within fourteen days, the ordinance is treated as if it has been approved by the Mayor. Charter, § 19(C). The City's power to pass ordinances relating to water and sewer systems are very broad, and includes the powers granted in §§ 34, 68, and 70 of the Charter. Finally, we understand that the proper use of an ordinance is to provide a generally applicable framework for regulating and controlling water and sewers.[7] *Inlet Assocs. v. Assateague House Condo. Ass'n.*, 313 Md. 413, 429 (1988) (stating that when a municipal action is "one of general application prescribing a new plan or policy, it is considered legislative and therefore must be accomplished by ordinance").

B.     Contracts for the Purpose of Providing Water and Sewer to New Service Areas

The process by which the City enters contracts "for the purpose of providing water and sewer services to new service areas" is not explicitly stated in the Charter, but is no less clear. Entering into contracts is an executive branch function. *Queen Anne's Conservation, Inc. v. Cty. Com'rs of Queen Anne's Cty.*, 382 Md. 306, 321 (2004) (stating that the negotiation of contracts on behalf of a local government body constitutes a discretionary, executive action); *see Montgomery Cty. v. Revere Nat'l Corp., Inc.*, 341 Md.

---

[7] In fact, the City has passed ordinances for the regulation and control of water and sewers. These are currently codified at Havre de Grace Code, Ch. 198 (water and sewers) and Ch. 169 (stormwater management).

366, 390 (1996) ("[W]hen the executive branch of the county government, in carrying out the laws and functions of government, enters into a contract, such action constitutes the exercise of executive discretion."); *Eggert v. Montgomery Cty. Council*, 263 Md. 243, 259 (1971) (stating that an executive action is one "which merely looks to or facilitates the administration, execution, or implementation of a law already in force and effect"). Contracts of the sort contemplated by the second sentence of § 70 of the Havre de Grace Charter could be entered into by the Mayor pursuant to the Mayor's power under Charter, § 18(B) or could be delegated by the Mayor to the Director of Public Works under Charter, § 63(B).[8]

## III.   CHARTER PROVISIONS RELATED TO ROADS

The Havre de Grace City Charter also contains several provisions specifically giving the City power over its roads. First, § 65 essentially grants the City complete control over all "public ways":

> The City has control of all public ways in the City, except such as may be under the jurisdiction of the Maryland State Highway Commission. Subject to the laws of the State of Maryland and this Charter the City may do whatever it deems necessary to establish, operate and maintain in good condition the public ways of the City.

---

[8] K. Hovnanian makes much of a passage in McQuillin's treatise on municipal corporations, which says that when a Charter is silent about the procedure for entering contracts, it is a function conducted by the city council. 10 McQuillin, *Municipal Corporations*, §§ 29:19; 29:25 (3d. Ed. Rev. 2010) (stating that the power to make contracts "generally … rests in the council or governing body" and "if the mode of contracting is not prescribed by statute or charter, a municipality may make a contract in the same manner as other corporations"). While we have tremendous respect for McQuillin's treatise and frequently rely upon it, that statement, while it may be true in certain circumstances (such as, for example, a municipal charter without a mayor), is not applicable to municipal corporations with a strong mayor form of government like the City of Havre de Grace.

10

Charter, § 65. Moreover, "public ways" is defined expansively to include all types of roads: "The term 'public ways' as used in this charter includes all streets, avenues, roads, highways, public thoroughfares, lanes[,] and alleys." Charter, § 64. Once again, the City's powers over public ways, including roads is plenary:

The City shall have the power to:

    A.    Establish, regulate and change from time to time the grade lines, width, and construction materials of any City public way or part thereof, bridges, curbs and gutters.

    B.    Grade, lay out, construct, open, extend, and make new City public ways.

    C.    Grade, straighten, widen, alter, improve, or close up any existing City public way or part thereof.

    D.    Pave, surface, repave, or resurface any City public way or part thereof.

    E.    Install, construct, reconstruct, repair, and maintain curbs and/or gutters along any City public way or part thereof.

    F.    Construct, reconstruct, maintain, and repair bridges.

    G.    Name City public ways.

    H.    Have surveys, plans, specifications, and estimates made for any of the above activities or projects or parts thereof.

Charter, § 66. *See also* Charter, §§ 33, 34. While there is no provision similar to § 70 for roads, we think it is self-evident that the City can, through its legislative process, pass ordinances regulating roads, Charter, § 34(A) (listing "streets or public ways" under the

11

City Council's specific powers), and can, through its executive processes, enter contracts for the maintenance, modification, and expansion of the road system.

## ANALYSIS

In *K. Hovnanian I*, K. Hovnanian's theory was that the City Council had, using the legislative process, bound the City to the recoupment agreement.[9] This Court, however, was limited in its review to the grounds relied upon by the circuit court in granting summary judgment and did not reach this theory. We now note that the recoupment agreement wasn't prepared in the form of an ordinance and did not proceed through the City Council as an ordinance must. Charter, § 19(A). It was not drafted in a general fashion, covering a multitude of situations, as ordinances are. *See Inlet Assocs.*, 313 Md. at 429 (describing ordinances). It was not presented to the Mayor by the Director of Administration and the Mayor neither vetoed it (and had that veto overridden) nor was it suggested that the Mayor's inaction constituted a "pocket passage" (as is permitted under § 19(C) of the Charter). The recoupment agreement, therefore, was not and could not have been approved using the legislative process.

In this second appeal, K. Hovnanian argues that the recoupment agreement set out its own terms for adoption, was adopted pursuant to those terms, and is therefore a valid and enforceable contract. The recoupment agreement recites that it was "approved [by City Council] … [, which] authorized the Mayor to sign the agreement, by affirmative vote at

---

[9] We acknowledge that the City Council did participate in the negotiation of this recoupment agreement. Whatever the political benefit of its participation (and it obviously had less benefit than anticipated) doesn't change the fact that its approval was, as a legal matter, surplusage.

the meeting of the City Council on October 4, 2010." K. Hovnanian argues that this represents a meeting of the minds between itself and the City of Havre de Grace and is, therefore, a binding contract.

While it may be true that nothing more is required in a standard bilateral contract than the meeting of the minds between the two contracting parties and that the parties may assent to contract formation by any means they desire, that rule is not true for government contracts. *See Cochran v. Norkunas*, 398 Md. 1, 14 (2007) (discussing contract formation). In Maryland, state and local governments can only enter into contracts through the processes determined by their respective foundational documents. The leading case in this sphere is *Gontrum v. Mayor & City Council of Baltimore*, 182 Md. 370 (1943). In *Gontrum*, the Court of Appeals held that a party who contracts with a municipal government is "bound to take notice of limitation of its powers to contract and also of the power of the particular officer or agency to make the contract." *Id*. at 375. Specifically, the Court noted that "[e]very person is presumed to know the nature and extent of the power of municipal officers, and therefore cannot be deemed to have been deceived or misled by acts done without legal authority." *Id*. at 378. The *Gontrum* principle exists to protect the public: "[I]t seems more reasonable that an individual should occasionally suffer from the mistakes of public agents or officials, than to adopt a rule, which, through proper combinations and collusion, might be turned to the detriment and injury of the public." *Id*. at 376. Thus, the *Gontrum* rule is that if you want to contract with local government in Maryland, you must follow the procedure laid out in its Charter and, if you fail to do so, you bear the risk of loss. We reaffirmed this principle in *Alternatives Unlimited, Inc. v. New Baltimore City*

*Board of School Commissioners*. 155 Md. App. 415, 428 (2004) ("*Gontrum* is now the unchallenged flagship case that is consistently and regularly followed.").[10]

Despite its complexity, this recoupment agreement is just a contract like any other that the City of Havre de Grace enters into every single day. Here, K. Hovnanian and the City Council purported to change the way in which the City of Havre de Grace enters into contracts. But such a method of entering into contracts—by City Council approval and a ministerial[11] mayoral acknowledgment—is not permitted by the City Charter and thus is not effective. Moreover, the Court of Appeals put the responsibility on those who, like K. Hovnanian here, seek to contract with a local government to "ascertain the nature and extent" of the authority of the City Council's power and the City is "not bound by a contract

---

[10] Judge Charles E. Moylan, Jr. extolled the virtues of *Gontrum*:

> The overarching principle of *Gontrum* is that a governmental entity, unlike a private corporation, may never have an obligation imposed upon it to expend public funds except in the formal manner expressly provided by law. There is no exemption from this rule because of any apparent authority of one of its agents to bind the governmental entity. There is imposed on any party dealing with the governmental entity, moreover, an absolute responsibility 1) to know the limitations on the powers of the agent to contract on behalf of the governmental entity and 2) to be familiar with and bound by "the power of the particular officer or agency to make the contract" in question.

*Alternatives Unlimited*, 155 Md. App. at 425.

[11] A ministerial act is a task in which "nothing is left to discretion" of the official, compared to a task where "the official has the freedom and authority to make decisions and choices." *Leake v. Johnson*, 204 Md. App. 387, 403 (2012).

made in its name" by the City Council which had "no authority to enter into such a contract on behalf of the [municipal] corporation." *Gontrum*, 182 Md. at 375.

The power to enter into contracts is an executive power. Moreover, the power to enter into contracts regarding water and sewer systems and regarding roads, are specifically executive functions. Charter, § 70. The proposed recoupment agreement is a contract regarding two topics: (1) roads; and (2) water and sewer. Under the Charter, both types of contracts are clearly and obviously permitted. But both types of contracts must be entered into by the Mayor (or a subordinate executive branch official) on behalf of the City of Havre de Grace. That didn't happen and, as a result, the City is not bound.

> **JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY REVERSED. COSTS TO BE PAID BY APPELLEES.**